Debra Bracewell, alias, Debra Jeanene Bracewell, was indicted by the grand jury of Covington County in a seven-count indictment under the Alabama Death Penalty Act[1] for the intentional killing of one Rex Carnley by shooting him with a pistol while in the commission of a robbery.
The trial court denied the appellant's application for youthful offender treatment and appointed two experienced lawyers to represent her.
Following the overruling of several pretrial motions, the appellant's trial in this cause ensued. The jury found the appellant guilty "as charged," and fixed punishment at death. The trial court thereafter conducted a hearing on the aggravating and mitigating circumstances, as required by law, and sentenced the appellant to death by electrocution.
The tenor of the State's evidence is to the effect that on the night of Sunday, August 14, 1977, Mr. Rex Carnley went to his store, known as "Carnley's Grocery," located on U.S. Highway 84, East, between Opp and Elba in Covington County, Alabama. Members of Mr. Carnley's family assisted him in opening the store, and others remained with him there until late evening, at which time, at Mr. Carnley's request, he was locked in the store to remain there during the evening because he was concerned about burglaries, and also due to the fact that he was keeping a large amount of cash within the premises.
Early the following morning, Mr. Carnley's body was found lying in the store with a pearl-handled .22 pistol lying beside his body.
The State Toxicologist's report indicated that nine shots were fired into his head and a number of bullets were removed therefrom. The cause of death was attributed to "death by gunshot wounds to the head."
Because reversible error occurred in the admission of the written confession of Debra Bracewell to Sheriff W.E. Harrell, on January 23, 1978, we must reverse and remand this cause for a new trial.
 I
Sheriff W.E. Harrell testified at trial that the appellant had been arrested on November 4, 1977, on another charge and placed in the Covington County Jail. Thereafter she was interrogated on three occasions in November and again on January 19, 1978. On at least two of these occasions, according to Sheriff Harrell and Mr. Marlon Brewer, Criminal Investigator for the State Department of Public Safety, Bureau of Investigation, she was given her constitutional rights through a Miranda warning. The two officers and the district attorney indicated that, prior to interrogating Debra Bracewell on January 23, 1978, she was again given a Miranda type warning, and that the interrogation took place in the Sheriff's Office in the Court House. They testified that she was not threatened, intimidated, coerced, or induced into making her statement.
Mrs. Debra Bracewell, however, testified that she was frightened by statements made to her by the district attorney concerning the possible death penalty. This was why she gave her statement. The officers and the district attorney refuted these assertions, and the trial court found the statements to have been voluntarily given.
The officers explained that her statement was taken down by notes made by Mrs. *Page 121 
Cassady, that she reduced the statement to typewritten form, and that the statement was then read by the appellant, who then signed it in the presence of Mrs. Cassady and Mr. Brewer.
Mrs. Bracewell admitted in this statement to the officers that she had driven to Mr. Rex Carnley's store with her husband, Charles Bracewell, during the late evening of August 14, 1977, knocked on the door, that Mr. Carnley admitted them, and that while they were talking about a purchase, her husband held a gun on Mr. Carnley while she obtained a pistol from underneath a counter, at her husband's direction, and held it on the deceased, Rex Carnley. A discussion ensued, she was directed by her husband to fire, which she did, and that later she saw her husband fire several shots at Mr. Carnley's head. Mrs. Bracewell stated that she ran outside, and shortly thereafter her husband came out with a pistol and the deceased's billfold in his hands, that they got in the car and her husband counted more than $1200.00 which he removed from this billfold.
Mr. Brewer testified on trial that his investigation revealed Mrs. Bracewell was seventeen years of age and had completed the seventh grade in school at the time she gave her statement.
Section 12-15-1 (3)b, Code of Alabama, 1975, reads as follows:
"(3) CHILD.
". . .
 "b. Such term, after December 31, 1977, means an individual under the age of 18 or under 19 years of age and who committed the act of delinquency with which he is charged before reaching the age of 18 years."
Section 12-15-67, Code of Alabama, 1975, reads as follows:
 "Use of statements of children, etc., during custody, preliminary inquiries, predisposition studies, etc., prior to determination of allegations of petition in delinquency or in need of supervision cases or prior to conviction in criminal proceedings.
 "Unless advised by counsel, the statements of a child or other information or evidence derived directly or indirectly from such statements made while in custody to police or law enforcement officers or made to the prosecutor or probation officer during the process of the case, including statements made during a preliminary inquiry, predisposition study, informal adjustment or consent decree, shall not be used prior to a determination of the petition's allegations in a delinquency or in need of supervision case or in a criminal proceeding prior to conviction. (Acts 1975, No. 1205, § 5-125)"
This Act became effective on January 16, 1977, Parker v.State, Ala.Cr.App., 351 So.2d 927, cert. denied, Ala.,351 So.2d 938 (1977), seven (7) months before this crime was committed.
Sheriff W.E. Harrell's testimony at trial (Volume 2, R. pp. 328-330) pertaining to the taking of a written statement from Debra Bracewell on January 23, 1978, reads as follows in pertinent part:
 "Q. And it says down there, which I have explained to you, that is not true, is it? You did not explain any more than to read her what is on that paper?
 "A. Yes, I read it to her and explained each line to her.
"Q. You did?
"A. Yes, sir. I asked her did she understand it.
 "Q. Well, go to the part in there about a lawyer. If you cannot afford — let's see. That's number three, isn't it?
"A. Yes, sir. Three and four pertain to that.
 "Q. Well, starting from the top there. `You have the right to remain silent.' That's the first thing. You read her that? `Anything you say can and will be used against you in a court of law.' You read her that?
"A. Yes, sir.
 "Q. And, `Three. You have the right to talk to a lawyer and have him present with you while you are being questioned.' Now, that's the one I am asking you about? *Page 122 
"A. Right.
 "Q. Did you say anything more to her when you told her, `You have a right to a lawyer,' did you, at that time, say to this young lady, how old was she then?
 "A. At that time, she had not reached her eighteenth birthday she said.
 "Q. She was eighteen then, Monday of this week, isn't she?
"A. Right.
 "Q. So, she was seventeen years old, this young girl that you were talking to there in the presence of these other men that you have just referred to, Mr. McGill, wasn't he there?
"A. Yes, sir.
 "Q. Sergeant Brewer of the Alabama Department of Investigation, wasn't he there?
"A. Yes, sir.
 "Q. And this was where, in the Sheriff's office, wasn't it?
"A. Right.
 "Q. And outside the door there were other deputy sheriffs and a secretarial force that you maintain down here in your office?
 "A. I don't know who was outside other than the secretaries.
 "Q. Did you then stop and say, Debra Bracewell, you have a right to a lawyer. Now, we will stop right here and if you don't have the money to hire a lawyer, we will have one appointed for you before we ask you anymore questions?
"A. No, I did not break it down that much.
"Q. Did you do it at all?
"A. Yes, sir.
"Q. Tell this jury exactly everything you did?
 "A. Okay. I told her that she had a right to talk to a lawyer and have him present with her while she was being questioned. I told her that if she could not afford to hire a lawyer, that the court would appoint one to represent her before we asked her anything, if she so desired. And she said she did not need a lawyer.
"Q. Oh, she did?
"A. That's right.
 "Q. Well, you didn't say that a moment ago. But she said she did not need a lawyer?
 "A. That's exactly right. And she come on down and repeated it again.
 "Q. All right. Now, the date of that was January twenty-three of '78, wasn't it?
"A. Yes, sir.
"Q. When was she arrested?
 "A. She was actually arrested on November the fourth of last year.
 "Q. All right. Now, Sheriff, she was then taken to the Covington County Jail and placed in confinement there November 4, 1977?
"A. Right."
Sheriff Harrell's testimony at trial also reveals that counsel was not appointed in her behalf until February 22, 1978 (R. p. 331).
Prior to the admission into evidence of the appellant's written statement (Volume II, R. pp. 348-350, State's Exhibit 32), the trial court conducted a hearing on the "voluntariness" of this statement, as well as on the advice as to her constitutional rights and Miranda type warning. Over objection of the defendant, and a motion to suppress and exclude, the trial court admitted Debra Bracewell's statement into evidence. Counsel at trial pointed out that, due to the age of the appellant, and the fact that she did not have counsel present at the time this confession was obtained, such should not be admitted. It is irrelevant that the appellant's confession was voluntarily made as she did not have counsel present at the time because of her age. Watts v. State, 361 So.2d 1200 (1978).
Because error to reversal occurred in the admission of appellant's confession into evidence (State's Exhibit N-. 32), under Section 12-15-67, Code of Alabama, 1975, it is mandatory for this Court to reverse and remand this cause for a new trial. Watts, supra.
REVERSED AND REMANDED.
All the Judges concur.
[1] Sections 13-11-2 through 13-11-9, Code of Alabama 1975. *Page 123