BOWEN, Presiding Judge.
Karen Denise Coleman was indicted and convicted for the murder of Rubin Fitzgerald Johnson, Jr. Sentence was twenty-five years’ imprisonment.
The only issue on appeal involves the prosecutor’s use of statements Coleman made to her probation officer in an attempt on cross examination to prove that Miss Coleman was a “set-shooting bitch” and used drugs.
The State’s evidence shows that sometime after midnight on August 3, 1982, several people had gathered in front of Beverly Dumas’ house. Miss Coleman and Rubin Johnson became involved in an argument and blows were exchanged. The two were separated and Coleman left the scene, only to return within a very short time and stab Johnson with a knife.
There is no significant conflict in the evidence, although there is some discrepancy as to what happened during the first incident. Basically, and ignoring these minor discrepancies, what occurred was that Johnson was expressing his sexual desire for Deloris Dixon when Miss Coleman told him he was vulgar. Johnson approached Coleman and, after some further comments were exchanged, slapped her. Johnson and Coleman fought until they were separated. Miss Coleman was either taken to or walked to the house where she remained for a short time. All would have been well had Coleman not returned to the scene.
The State’s evidence tends to show that Coleman returned to pursue the matter and to ask Johnson why he slapped her. After confronting Johnson, she attacked him, stabbing him before anyone discovered that she was armed with a steak knife. Miss Coleman cut two of the individuals who attempted to stop the fight. After the two were separated, Miss Coleman “struggled to get aloose” and refused to surrender the knife. Johnson had been stabbed four times and died “as a result of blood loss through the stab wounds.”
The defense presented testimony that Miss Dixon and Miss Coleman were leaving after the initial encounter, when Johnson grabbed Coleman, held a knife to her throat and told her in crude language that he intended to have sexual relations with her. Miss Coleman began to struggle and when Johnson dropped the knife she grabbed it and stabbed'him twice.
On direct examination by defense counsel, Miss Dixon testified that, before Johnson slapped Miss Coleman during the first incident, Johnson called her an “old set-shooting bitch.”
Miss Coleman testified that Johnson twice called her a “set-shooting bitch”: once before he slapped her, and the second time when she and Dixon were walking home.
On cross examination of Miss Coleman, the assistant district attorney attempted to establish that “set” referred to drugs and that Miss Coleman had personal experience with “sets”:
“Q. (Assistant District Attorney): Do you know what sets are?
“A. Well, I’ve heard that they were barbiturates.
“Q. You’ve heard? You don’t have any personal experience with sets?
“A. No, I don’t.”
[[Image here]]
“Q. Do you know how sets are used? “A. Not exactly.”
[[Image here]]
“Q. Are you familiar with Talwin?
“A. No, I’m not.
“Q. You don’t know that Talwin is called sets on the street and it’s used to shoot up in your veins, give you a cheap heroin high? You’re not familiar with that?
*1357 “A. I know sets are used to shoot up.
“Q. Have you ever used sets to shoot up yourself?
“A. No, I have not.
*“Q. You remember talking with Terri Luker, a probation officer of this State? “A. No, I don’t.
“Q. You don’t recall that?
“A. No, I don’t.”
[[Image here]]
“Q. You remember talking with Terri Luker, a probation officer? That’s a woman now, a probation officer, in regard to a Youthful Offender request? “A. No, I don’t.
“Q. You deny that you ever talked with Terri Luker?
“A. Yes, I do.
“Q. You don’t recall telling Terri Luker that you regularly used Talwin?
“A. No, I don’t.”
The above exchange does not reflect the vigorous and strenuous objections interposed by defense counsel. The State makes no contention that this issue has not been preserved by proper objection. Our review shows that counsel was most diligent in this regard. Counsel not only objected but, after the last answer, moved to exclude. The trial judge denied the motion because “she’s already denied it.”
After the defense rested its case, defense counsel requested curative instructions on this issue.
“ME. BYRD (Defense Counsel): Your Honor, before we go to the rebuttal I would request in the alternative either a curative instruction as to use of the Y.O. report or a mistrial, based on the grounds that the Prosecutor has used information which was privileged. When obtained it was not to be used against the Defendant in any court proceeding.
“THE COURT: You’re the only one that’s said that and for the record I deny it if your request was a mistrial.
“MR. BYRD: I requested curative instruction, Your Honor.”
After the State presented its rebuttal' testimony, defense counsel made another objection, and the following occurred:
“MR. BYRD: The Defendant renews the motion for directed judgment, assigns all the grounds stated previously and adds to that the ground that Prosecutor conducted improper cross examination of the Defendant, referring to statements she allegedly made to a State Probation Officer during an examination to consider whether the Defendant would be granted her Youthful Offender status request.
“THE COURT: Are you through?
“MR. BYRD: Yes, sir.
“THE COURT: I deny it, and I’ll also state for the record that I specifically told both the attorneys up here, which I don’t believe was on record, that I would not let him go into any such report, told him I felt there was a statute right on point on it and—
“MR. HARGETT (Assistant District Attorney): I have since looked it up, Judge.
“THE COURT: And you’ve since found out I was correct?
“MR. HARGETT: Yes, sir.
“THE COURT: Bring the jury in.
“MR. BYRD: Sir, just one second. While we’re on the record, Mr. Hargett, that was Miss Luker of the State Probation and Parole and it was a Youthful Offender investigation that you were reading from in questioning the Defendant, wasn’t it?
“MR. HARGETT: I wasn’t reading from anything at the time.
“MR. BYRD: The state—
“THE COURT: I don’t know why we’re playing games. Put anything you want in the record.
“MR. BYRD: Well, I wanted — Mr. Har-gett, it was a Youthful Offender report that you were quoting from?
“MR. HARGETT: Certainly.
“MR. BYRD: And it was for Youthful Offender consideration is the reason that report was made, right?
“MR. HARGETT: Yes.”
*1358 Alabama Code Section 15-19-5 (1975) provides: “No statement, admission or confession made by a defendant to the court or to any officer thereof during the examination and investigation referred to in section 15-19-1 (for determining whether an individual should be tried as a youthful offender) shall be admissible as evidence against him or his interest.” Here, the prosecutor’s use of a statement Coleman made to a state probation officer as part of a youthful offender investigation clearly violated this statutory prohibition. Despite this flagrant violation, we find the error to be harmless.
Whether or not Miss Coleman was a “set-shooting bitch” is entirely immaterial and irrelevant to the issues involved in this case. Moreover, the general rule is that the accused is not prejudiced by the trial judge allowing the State to question him as to statements alleged to have been made by him to a witness, where he denied making the statements. McGehee v. State, 171 Ala. 19, 55 So. 159 (1911); Beavers v. State, 151 Ala. 5, 44 So. 401 (1907); Thompson v. State, 100 Ala. 70, 14 So. 878 (1894). Negative answers to improper questions constitute harmless error. Young v. State, 416 So.2d 1109 (Ala.Cr.App.1982); Wyrick v. State, 409 So.2d 969 (Ala.Cr.App.1981); Allen v. State, 390 So.2d 676 (Ala.Cr.App.1980); McGhee v. State, 41 Ala.App. 669, 149 So.2d 1 (1962), affirmed, 274 Ala. 373, 149 So.2d 5 (1963); McClendon v. State, 21 Ala.App. 494, 109 So. 526 (1926). “A negative answer to a question asked on cross-examination even though the question itself was improper cannot result in harm to the appellant.” Barton v. State, 376 So.2d 756, 760 (Ala.Cr.App.), cert. denied, 376 So.2d 761 (Ala.1979). While we find the question offensive, examination of the cited cases reveals that this rule has been applied in cases far more egregious than that presented here.
“Error in asking, or allowing the asking of, questions which are improper on cross-examination may be prejudicial and reversible error; and this principle is particularly applicable where the evidence in the case is fairly evenly balanced....”
However, such error is not a ground for reversal where the rights of accused are not substantially prejudiced thereby.... So, also, such error is not a ground for reversal where the answer is such as to render the error harmless, as, except, according to some decisions, in extreme cases, where the witness answered in the negative and such denial on his part was not contradicted by the opposing side, particularly where the court admonished the jury to disregard such cross-examination, although such admonition was not necessary....”
24B C.J.S. Criminal Law, Section 1914(5) (1962).
We fully recognize that some questions may be so highly prejudicial in and of themselves, that their very asking constitutes reversible error, even if answered in the negative. West v. State, 17 Ala.App. 353, 85 So. 833 (1920). However, the prosecutor’s questions do not rise to such a level under the facts of this case.
We find that, although the prosecutor’s attempts to impeach the defendant with statements she made to a state probation officer were improper because of the youthful offender statute, the error was harmless because (1) the questions were answered in the negative, (2) the reference to the defendant as a “set-shooting bitch” was initially introduced by a defense witness, and (3) the questions are not so prejudicial as to be ineradicable.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.