Appellant, Carnel Jackson, was indicted April 17, 1981, in a three-count indictment, under the Alabama Death Penalty Act, 1975 Ala. Acts 213 (September 9, 1975), for robbery or an attempt thereof when the victim is intentionally killed, rape when the victim is intentionally killed, and murder in the first degree wherein two or more human beings are intentionally killed by one or a series of acts. §§ 13A-5-31(a)(2), (3), and (10), Code of Alabama (Supp. 1978) (repealed 1981).[1]
This case arose out of an incident involving Myra Faye Tucker and her husband, Terry Wayne Tucker, which occurred on *Page 649 
January 17, 1981. The bodies of the Tuckers were discovered on an old mining road in Jefferson County, Alabama, on that date. They had been murdered where they were found, had been dead only a few hours, and had been killed by shotgun blasts. A few days thereafter, Jackson, Jerry Steven Godbolt,[2] and Wayne Anthony Agee[3] were arrested and charged with the crime.
The case was tried before a jury, and on November 19, 1981, the jury returned a verdict of guilty of two of the capital offenses charged in the indictment, i.e., rape when the victim is intentionally killed, and murder in the first degree when two or more human beings are intentionally killed by one or a series of acts, §§ 13A-5-31(a)(3) and (10). The count of the indictment charging robbery when the victim is intentionally killed was removed from the jury's consideration by the granting of a motion for a judgment of acquittal due to failure of proof. A sentencing determining hearing was held in accordance with Beck v. State, 396 So.2d 645 (Ala. 1980), and the jury fixed appellant's punishment at death. Thereafter, the trial court held a separate sentencing hearing and, after weighing the aggravating and mitigating circumstances, and considering the jury's recommendation of the death sentence, sentenced appellant to death.
On appeal, we affirmed. Jackson v. State, 516 So.2d 726
(Ala.Cr.App. 1985). The Alabama Supreme Court granted certiorari and remanded the case with instructions to afford appellant the opportunity to establish a prima facie case of purposeful discrimination in the selection of the petit jury which heard his case, in accordance with the holding and procedure outlined in Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Ex parte Jackson,516 So.2d 768 (Ala. 1986).[4] We remanded the case to the trial court in accordance with our supreme court's instructions. Jackson v.State, 516 So.2d 774 (Ala.Cr.App. 1987). Due return was made to this court advising us that an evidentiary hearing was held pursuant to Jackson and in accordance with Batson; that a prima facie showing of purposeful discrimination in the prosecutor's exercise of jury strikes was made; and that the prosecution was unable to produce race-neutral explanations for its peremptory strikes, while not conceding racial bias. The trial court sought instructions. It being clear to us that under these circumstances appellant was entitled to a new trial under the holdings in Jackson and Batson, we remanded the case again with instructions to enter the appropriate order. The trial court did so on October 16, 1987, setting aside the judgment of conviction and granting appellant a new trial. Jackson,516 So.2d at 774-75.
The instant appeal is from appellant's second trial on the two counts of the indictment *Page 650 
upon which he had been previously convicted, i.e., the rape and intentional killing of Myra Faye Tucker, § 13A-5-31(a)(3), and the intentional killing of Myra Faye Tucker and Terry Wayne Tucker by one or a series of acts, § 13A-5-31(a)(10), wherein he was convicted again after a jury trial on both counts as charged. The second trial was conducted in accordance with the bifurcated procedures outlined in Beck v. State. After a sentencing hearing, the jury recommended a sentence of life imprisonment without parole, the vote being nine for life without parole and three for death. The trial court then held a separate hearing and, after weighing the aggravating and mitigating circumstances, and considering the recommendation of the jury, sentenced appellant, on May 6, 1988, to life imprisonment without the possibility of parole. From this second conviction and sentence, appellant prosecutes this appeal. It is unnecessary to restate the general facts of the case. They are fully set out in Jackson, 516 So.2d at 735-37. Three issues are raised on appeal.
 I.
Appellant contends, as he did in his first trial, that the trial court committed reversible error in denying his motion to suppress his alleged confession. The facts pertaining to the taking of the confession are set out in detail in our opinion rendered on the first appeal. 516 So.2d 741-46. We have carefully reviewed the record of the second trial now before us, including the evidence presented in support of the motion to suppress, and we find that this evidence is practically identical to that presented at the first trial and set out in our opinion. As in the first trial, appellant did not testify during the suppression hearing.
We have thoroughly reviewed the totality of the circumstances surrounding the confession, and we are again convinced that the confession was voluntarily given after a knowing and intelligent waiver, by appellant, of his Fifth and Sixth Amendment rights. No new facts have developed nor have there been any changes in the law that would cause us to change our previous opinion. We reaffirm and adopt our opinion previously rendered on this issue in the first appeal. Id. at 741-46. We find that appellant's confession was properly admitted into evidence.
Appellant argues in his brief that, because he was a juvenile at the time of his confession, it should not have been admitted into evidence without a showing that an attorney was present representing him at the time the confession was made. He cites §§ 12-15-1(3)(a) and (b), Code of Alabama 1975, and Bracewellv. State, 401 So.2d 119 (Ala.Cr.App.), rev'd, 401 So.2d 123
(Ala. 1979), on remand, 401 So.2d 124 (Ala.Cr.App.), cert. denied, 401 So.2d 130 (Ala.), vacated, 449 U.S. 915,101 S.Ct. 312, 66 L.Ed.2d 143 (1980), after remandment, 401 So.2d 130
(Ala.Cr.App.), cert. denied, 401 So.2d 130 (Ala. 1981), in support of his argument. This contention was never presented to the trial court. The trial court cannot be placed in error on grounds not asserted, and those not asserted are waived.Johnson v. State, 421 So.2d 1306 (Ala.Cr.App. 1982). Moreover, an objection must be sufficient to allow the trial court to make an informed decision; otherwise an alleged error is not preserved for review. Ex parte Weaver, 530 So.2d 258 (Ala. 1988). Thus, this issue, not having been properly preserved below, is precluded from review. Biddie v. State, 516 So.2d 846
(Ala. 1987), Bracewell v. State, 447 So.2d 815 (Ala.Cr.App. 1983), aff'd, 447 So.2d 827 (Ala. 1984).
 II.
Appellant next contends that the trial court erred in denying his motion for a mistrial. The record reflects the following:
 "Q. [Prosecutor to Officer Gay]: And, did you also take a statement from Jerry Godbolt and Wayne Agee in this case?
"A. Yes, sir. I did.
 "Q. And, based on the statements that you took from them, did you arrest Carnel Jackson?
 "MR. TURBERVILLE [Defense Counsel]: Your Honor, I object to that. That is hearsay, and I ask that [it] be stricken. *Page 651 
 "THE COURT: It would probably be unwise to go into the foundation of the arrest. It would be full of, perhaps, impermissible things.
 "MR. TURBERVILLE: And ask for a mistrial based on that.
"THE COURT: No, sir, I can't do that.
 "MR. TURBERVILLE: Ask the jury not to consider it.
 "THE COURT: Well, I sustained the objection, Dan. And there was no response before I sustained the objection.
 "MR. TURBERVILLE: Well, the question, your Honor, is so prejudicial that I would like to — just the mere question — and the prosecutor knows in pulling that out —
 "THE COURT: Well, I will try to talk to them a little bit. You understand, as you know from yesterday, the day before, the lawyers are advocates. They are down there making objections to things that they believe are inadmissible, and I make the call.
 "And if I sustain an objection and there is no answer, it is just as though the question were never asked.
 "Is that fair enough? Can you live with that? Good.
 "MR. TURBERVILLE: Judge, in all due respect, I am not being facetious, but if someone ran through here naked and you asked them to put it out of their mind, they couldn't do it.
 "THE COURT: That would be different, wouldn't it? That would be a little bit different.
 "MR. LOFTIN: I have no further questions of Sergeant Gay."
Appellant contends that the prosecutor's question placed an inference, in the minds of the jurors, that the co-defendants had implicated him in the crimes charged. He argues that the question impliedly injects a nontestifying co-defendant's extrajudicial statement inculpating him, violating his right of confrontation. However, the trial court sustained appellant's objection to the question. The question was never answered. In addition, the trial court properly instructed the jury to disregard the question by instructing that, when the court sustained an objection to a question before it was answered, "it is just as though the question were never asked."
We do not believe that the question objected to here created a situation so prejudicial that it could not have been eradicated from the minds of the jury. We believe that the action of the trial judge removed any possible prejudice that might have arisen as a result of the question. See Minor v.State, 402 So.2d 1121 (Ala.Cr.App. 1981). The granting of a motion for a mistrial lies within the discretion of the trial court, and its ruling thereon will not be disturbed in the absence of abuse of that discretion. Ex parte Jefferson,473 So.2d 1110 (Ala. 1985), cert. denied, 479 U.S. 922,107 S.Ct. 328, 93 L.Ed.2d 300 (1985). We find no abuse of discretion here. The denial of the motion for a mistrial was proper.
 III.
Last, appellant contends that it was error to admit into evidence a photograph of co-defendant Jerry Godbolt. The photograph pictured deformities of Godbolt's right arm and hand. We first note that the photograph was unquestionably relevant, for it tended to prove the state's theory of how the murder occurred, and it corroborated appellant's confession. Appellant, according to Sergeant Gay, stated in his confession that Godbolt "shot into the ground, dirt flew up in his [appellant's] face and that pissed him [appellant] off. He [appellant] grabbed the shotgun, he [appellant] shot her first and then him." The deformity cast light on Godbolt's handling of the weapon and helped explain the hole in the ground at the scene, which obviously had been made by a shotgun blast.
Appellant more particularly questions the accuracy of the deformities. Here, Sergeant Gay testified that the photograph accurately depicted Godbolt's deformities. Even appellant's own witness, Marvin Mabry, identified the photograph as that of Godbolt. The admission of photographic evidence rests in the sound discretion of the trial court. Updyke v. State, *Page 652 501 So.2d 566 (Ala.Cr.App. 1986). We find no abuse of discretion here and hold that the photograph was properly admitted.
For the above reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] These code sections as they appeared in Blue Supplement are a recodification of §§ 13-11-2(a)(2), (3), and (10), Code of Alabama 1975. The 1975 capital punishment statute, as contained in §§ 13-11-1 through 13-11-9, was, upon adoption of the new criminal code, effective January 1, 1980, recodified in identical language as §§ 13A-5-30 through 13A-5-38. These sections of the new criminal code were repealed effective July 1, 1981, by the 1981 capital offense statute, which applies only to conduct occurring on or after July 1, 1981; the repeal of §§ 13A-5-30 through 13A-5-38 did not affect the applicability of those sections to conduct that occurred before July 1, 1981.
[2] Godbolt was convicted of the robbery-intentional killing of Mrs. Tucker. The jury recommended the death sentence; however, the trial court sentenced him to life imprisonment without the possibility of parole. Godbolt v. State, 429 So.2d 1131
(Ala.Cr.App. 1982).
[3] Agee was convicted under a two-count indictment for the robbery-intentional killing and the rape-intentional killing of Mrs. Tucker. He was also convicted under a separate indictment for the robbery-intentional killing of Mr. Tucker. The jury recommended the sentence of life imprisonment without the possibility of parole under each conviction, and the trial court accepted the recommendation of the jury and sentenced Agee accordingly. Agee v. State, 465 So.2d 1196 (Ala.Cr.App. 1984).
[4] We note, as a matter of interest, that this was the first decision of the Alabama Supreme Court applying Batson. It is also interesting to note that, even though the United States Supreme Court in Batson did not address the question of whether the holding would be retroactive, the Alabama Supreme Court held that its decision in Jackson would be applied retroactively, stating:
 "Although we know that the United States Supreme Court has not yet ruled on whether Batson v. Kentucky is to be applied retroactively, this court does not need to await revelation from the federal judiciary when our own state constitution also guarantees to a criminal defendant the equal protection of the laws. Sections 1, 6, and 22, Ala. Const. 1901, combine to guarantee equal protection of the laws."
516 So.2d at 772. Subsequently, the United States Supreme Court did hold that Batson would be applied retroactively to all cases pending on direct review. Griffith v. Kentucky,479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).