This is a consolidated appeal brought by Charles and Kathleen Cure. The appellants were indicted separately and their cases were consolidated for trial. Kathleen Cure was convicted of child abuse, in violation of § 26-15-3, Code of Alabama 1975, of distributing marijuana in violation of § 13A-12-211, three counts of first degree rape, in violation of § 13A-6-61(a)(1),[1]
and three counts of first degree sodomy, in violation of §13A-6-63(a)(1). Charles Cure was convicted of distributing marijuana in violation of § 13A-12-211, three counts of first degree rape, in violation of § 13A-6-61(a)(1) and three counts of first degree sodomy, in violation of § 13A-6-63(a)(1). The victim of these offenses was the appellants' minor daughter. The record reveals that the acts perpetrated on the victim were despicable. The appellants raise several issues on appeal. Some issues are raised by both appellants and will be addressed jointly.
 I
Kathleen Cure contends that she was denied the opportunity to be heard prior to the consolidation of the cases against both appellants. This argument has no merit. The record reveals that the appellant was given the opportunity to be heard on the State's motion to consolidate. Furthermore, the appellant presented a thorough argument against consolidation. Thus, the record does not support the appellant's argument.
 II
Both appellants contend that the trial court erred in failing to provide them with the reports of abuse and neglect pursuant to § 26-14-8(b), Code of Alabama 1975, that had been prepared by the Department of Human Resources (hereinafter "DHR"). The appellants argue that the statute requires that they be provided with all of the DHR records. The record reveals that, prior to trial, the appellants apparently *Page 417 
asked the court for all exculpatory material and all material that could conceivably be used to impeach the victim. The trial court then conducted an in camera review of the DHR records and provided the appellants with all of the information that was exculpatory or could conceivably be used for impeachment. The trial court also indicated that there were no statements that had been either written or subscribed to by the victim. The trial court also stated that the victim made no taped statements. The appellants requested the same type of information during the trial. The trial court reiterated that there were no such statements made by the victim and that all of the requested information had been provided through the incamera review. The appellants now claim that they are entitled to review all of the information in the DHR file concerning this case.
In order to determine the appellants' entitlement, if any, to the reports under the statute, we must first examine the legislative intent of the statute. "The cardinal rule for construction of a statute is to ascertain the legislative intent, which must be determined by examining the statute as a whole in light of its general purpose." Decatur v. City Boardof Educ. v. Aycock, 562 So.2d 1331, 1333 (Ala.Civ.App. 1990) (quoting Gulf Coast Media, Inc. v. Mobile Press Register, Inc.,470 So.2d 1211, 1213 (Ala. 1985)).
Chapter 14 of Title 26 is entitled, "Reporting of Child Abuse or Neglect." Section 26-14-2 sets out the purpose of the chapter as follows:
 "In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities. It is the intent of the legislature that, as a result of such efforts, and through the cooperation of the State, county, local agencies and divisions of government, protective services shall be made available in an effort to prevent further abuses and neglect, to safeguard and enforce the general welfare of such children, and to encourage cooperation among the states in dealing with the problems of child abuse."
The statute cited by the appellants, § 26-14-8, is titled, "Establishment of central registry; confidentiality of records and reports." Section 26-14-8(b) provides, in part, that "reports and records of abuse shall be confidential, and shall not be used or disclosed for any other purposes than. . . ." The statute then lists several instances in which such records may be disclosed, including "[f]or use by an attorney . . . in representing or defending a child or its parents . . . in a court proceeding related to abuse or neglect of said child." Section 26-14-8(c) provides that violation of this confidentiality provision is a misdemeanor offense. The disclosure of the records in instances listed would not constitute a misdemeanor under § 26-14-8(c).
Our review of the statute, as a whole, indicates that Chapter 14 was clearly enacted and designed for the protection of children. In fact, the Court of Civil Appeals reached this conclusion in Decatur City Board of Educ. v. Aycock. The court stated, "A careful reading of the various sections of Title 26, Chapter 14 indicates the intent of the legislature to protectchildren and to safeguard and enforce their general welfare
through the reporting of abuse and neglect." 562 So.2d at 1334 (emphasis in original). The court further stated that "[r]eports and records of child abuse and neglect areconfidential and may be used for the purposes listed." Id.
The relevant federal statute is the Child Abuse Prevention and Treatment Act. The Act provides that one of the things a State must do in order to qualify for a grant is "provide for methods to preserve the confidentiality of all records."42 U.S.C. § 5106a(b)(4) (Supp. 1991). The regulations by which the statute is implemented state that a "State must provide by statute that all records concerning reports and reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense." 45 C.F.R. § 1340.-14(i)(1). They also provide, however, that a State may authorize disclosure to certain persons and agencies "under limitations *Page 418 
and procedures the State determines." 45 C.F.R. 1340.14(i)(2). These persons and agencies are substantially those reflected in § 26-14-8. Our review of that statute indicates that its primary goal was to provide for confidentiality. It also appears that a secondary goal was to conform to the mandates of federal law. See generally Harris v. City of Montgomery,435 So.2d 1207, 1213 (Ala. 1983). Neither of these goals suggests that the statute was intended as an entitlement to mandatory discovery in a criminal case.
This issue was addressed by the Maryland Supreme Court inState v. Runge, 317 Md. 613, 566 A.2d 88 (1989). In interpreting a substantially similar statute, the court stated that when the statute allows for disclosure under certain limited circumstances or to designated entities, "it is telling us that custodians have authority to release the information within the statutory framework and that if it is so released, the custodians will not be subject to prosecution under [the statute]." 566 A.2d at 91. The court further stated, that contrary to the defendant's contention, "the subsection is not a mandatory discovery provision that directs disclosure of confidential social services records to child abusers or to the parents of abused children." Id.
We agree with the Maryland court and find that § 26-14-8
should not be read as an entitlement to mandatory discovery in a criminal case. Because the appellants base their entitlement argument solely on the Alabama statute, we are not required to address the disclosure principles set out in Pennsylvania v.Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). We do note, however, that the appellants apparently requested all information that was exculpatory and that could conceivably be used for impeachment. This information was provided to them through the trial court's in camera review and satisfied the requirement that they be provided information material to their defense. Ritchie; Russell v. State, 533 So.2d 725
(Ala.Crim.App. 1988) (trial court did not err in conducting in camera
review and appellant received all conceivably exculpatory information from in camera review of DHR file); State v. Runge
(trial court conducted in camera review). See also Ex parteSmith, 555 So.2d 1106 (Ala.Civ.App. 1988) (trial court properly conducted in camera review of DHR records and ordered discovery of relevant information). Thus, we find no error in the court's ruling.
 III
Both appellants contend that the trial court erred in allowing James Taylor to testify that he pleaded guilty to an offense that also involved the appellants' daughter. This issue was not preserved for review. James Taylor's guilty plea was first brought out during the direct examination of one of the law enforcement officers who investigated the case. Kathleen Cure simply stated that she objected and moved to strike the question. A general objection does not preserve an issue for appellate review. Thompson v. State, 575 So.2d 1238
(Ala.Crim.App. 1991); Jackson v. State, 553 So.2d 647 (Ala.Crim.App. 1989). James Taylor's guilty plea was also brought out without any objection during the State's direct examination of James Taylor and during Charles Cure's cross-examination of James Taylor. Thus, Charles Cure cannot now claim that he was injured by the admission of this testimony. Mooney v. State,548 So.2d 1091 (Ala.Crim.App. 1989). We note that we also disagree with the appellants' characterization of James Taylor as a co-defendant or an accomplice. There is no evidence in the record that he was a participant in any of the charged offenses.
 IV
Both appellants next contend that the trial court erred in admitting a statement made by Kathleen Cure because she was not advised of her Miranda rights before giving the statement. The statement that the appellants object to was overheard by a law enforcement officer during a telephone conversation between Kathleen Cure and a friend who lived in New Orleans. The record reveals that Kathleen Cure called the friend while law *Page 419 
enforcement officers were executing a search warrant at the friend's home. They were searching for a briefcase left by the appellants when the appellants made a trip to New Orleans shortly before their arrest. The appellants had already been arrested, and Kathleen Cure was in jail when she made the telephone call. Deputy Marvin Ussery listened in to the conversation at the friend's direction. During this conversation, Ussery heard Kathleen Cure say that Charles had not "messed with any of the girls in the last two years." (R. 777.) This is the statement to which the appellants now object. During cross-examination, Ussery stated that he may have asked the Cures' friend to ask the appellant why they wanted to hide the briefcase. He further testified that he did not ask the friend to ask Kathleen Cure any other questions. The appellants now claim that the Cures' friend was actually an agent of the law enforcement officers, and thus, that Kathleen Cure should have been informed of her Miranda rights prior to making the statement. We disagree.
The record reveals that Kathleen Cure was not in custody within the meaning of Miranda when she made the telephone call. A person being questioned is not in custody within the meaning of Miranda unless the questioning occurs "in a context where [his] freedom to depart [is] restricted in any way." Oregon v.Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714
(1977). "In recognizing 'that a prison inmate is not automatically always in "custody" within the meaning ofMiranda,' United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1985), cert. denied, 479 U.S. 830, 107 S.Ct. 114, 93 L.Ed.2d 61
(1986), we hold that 'custody' or 'restriction' in the context of prison 'necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement,' id (quoting Cervantes v. Walker, 589 F.2d [424, 428 (9th Cir. 1978)]. 'Thus, whether an inmate is "in custody" under Miranda depends on the circumstances of the case.' United States v. Cooper, 800 F.2d 412, 414 (4th Cir. 1986)." Arthur v. State, 575 So.2d 1165, 1188 (Ala.Crim.App. 1990), cert. denied, 575 So.2d 1191 (Ala. 1991). Without deciding whether the Cures' friend was an agent acting on behalf of law enforcement officers or was a private citizen, we hold that the trial court properly admitted the statement because of the noncustodial context in which the statement was made. The appellant had the freedom to make a telephone call and could have hung up the telephone at any time. She was not "in custody" within the meaning of Miranda. Furthermore, even if the friend was considered an agent, she only acted as an agent with reference to Ussery's question about the briefcase. The other statements made by Kathleen Cure were purely voluntary and unsolicited and had no connection with the briefcase.
 V
Kathleen Cure argues that she was improperly charged and convicted of three counts of aiding and abetting rape. Because Charles Cure was the victim's father, she argues, she should have been charged with aiding and abetting incest, in violation of § 13A-13-3, Code of Alabama 1975. This argument has no merit. The State sufficiently proved that Kathleen Cure aided and abetted Charles Cure when he forcibly raped his daughter on the three occasions charged in the indictment. The criminality of the acts perpetrated on the appellants' daughter was compounded by the fact that the intercourse occurred under the threat of force. Although lack of consent is an element of first degree rape under § 13A-6-61(a)(1), it is not an element of incest. We find that the appellant was properly charged with and convicted of first degree rape. See, e.g., Parks v. State,565 So.2d 1265 (Ala.Crim.App. 1990). Without finding that any error occurred in charging the appellant under §13A-6-63(a)(3), we note that any error would have been harmless in light of the verdict.
 VI
Both appellants contend that the trial court improperly admitted evidence of Kathleen Cure's extramarital affairs. This argument was not preserved for review. The record reveals that prior to the objection *Page 420 
to the testimony now challenged by the appellants, substantially similar testimony had been presented by the State without objection. Prejudicial error may not be predicated on the admission of evidence that has been admitted without objection at some other stage of the trial. Lawrence v. State,409 So.2d 987 (Ala.Crim.App. 1982); Ware v. State,409 So.2d 886 (Ala.Crim.App. 1981), cert. quashed, Ex parte Ware,409 So.2d 893 (Ala. 1982); Chambers v. State, 400 So.2d 436
(Ala.Crim.App. 1981). Furthermore, the appellants themselves testified about Kathleen Cure's adulterous relationships. The appellants cannot complain about the admission of improper evidence when they testified to the same facts. Kinder v.State, 515 So.2d 55 (Ala.Crim.App. 1986); Wyrick v. State,409 So.2d 969 (Ala.Crim.App. 1981). We further note that, in light of the particular facts and circumstances of this case and the charged offenses, the evidence was properly admitted. These events were so inextricably intertwined with the charged offenses as to be part of the res gestae. See Smith v. State,447 So.2d 1327 (Ala.Crim.App. 1983), aff'd, 447 So.2d 1334
(Ala. 1984).
 VII
Kathleen Cure contends that the trial court improperly admitted evidence of marijuana use other than that charged in the indictment. She first contends that the trial court erred in allowing the State to ask her if she had ever been present when anyone had given her children marijuana. This objection was not preserved for review because the appellant made a general rather than a specific objection. Thompson v. State,575 So.2d 1238 (Ala.Crim.App. 1991); Jackson v. State,553 So.2d 647 (Ala.Crim.App. 1989). The appellant's objection to Deputy John Stewart's rebuttal testimony has no merit because the record reveals that his testimony constituted proper rebuttal. See, e.g., Stoner v. State, 418 So.2d 171
(Ala.Crim.App.), cert. denied, 418 So.2d 184 (Ala. 1982), cert. denied,459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (Ala. 1983). The appellant's cited challenge to James Taylor's testimony was also not preserved for review. The first objection to the testimony regarding marijuana use was based on improper predicate. The appellant now challenges the admission of the testimony on other grounds. The assignment of specific grounds of objection waives all other grounds. Snowden v. State,574 So.2d 960 (Ala.Crim.App. 1990); Leonard v. State,551 So.2d 1143 (Ala.Crim.App. 1989). The appellant's second objection to James Taylor's testimony was not preserved for review because the appellant made a general rather than a specific objection. Thompson; Jackson. The appellant's cited challenge to the testimony of Calvin Cure was also not preserved as the appellant made no objection to the testimony. Furthermore, even if there had been error, any error was harmless in light of the witness's negative response to the State's question. Coleman v.State, 452 So.2d 1355 (Ala.Crim.App. 1984). The appellant's challenge to the testimony of Leta Cure has no merit as the testimony constituted proper rebuttal.
 VIII
Both appellants contend that their indictments were defective because they failed to adequately inform them of the offenses with which they were charged. We first note that Kathleen Cure failed to file her motion to dismiss within the 14 days after arraignment that the trial court allowed for special pleas. Ala.R.Crim.P.Temp. 16.3(a)(1). Despite this failure, we have carefully reviewed both indictments and find that they sufficiently apprised the appellants of the offenses with which they were charged. "An indictment which follows the language of a statute is sufficient to apprise the [defendant] of the charges against him and to allow him to prepare a defense."State v. Franklin, 541 So.2d 593, 59 (Ala.Crim.App. 1989) (citations omitted). See also Rogers v. State, 539 So.2d 451
(Ala.Crim.App. 1988). Furthermore, the indictments were not required to allege the time and places of the alleged offenses. "It is not necessary to state the precise time at which an offense was committed in an indictment, but it may be alleged to *Page 421 
have been committed on any day before the finding of the indictment, or generally before the finding of the indictment, unless time is a material ingredient of the offense."Coburn v. State, 424 So.2d 665, 667 (Ala.Crim.App. 1982). Time is not a material offense of first degree rape, first degree sodomy, or child abuse. See Hambley v. State,565 So.2d 692 (Ala.Crim.App. 1990) (time not a material element of offense of first degree sexual abuse charge); Sasser v. State,494 So.2d 857 (Ala.Crim.App. 1987) (time not a material element of first degree rape charge).
The appellant also apparently argues that the trial court erred by not requiring the State to elect between two incidents of child abuse prior to trial. This argument has no merit. The State proved two incidents of child abuse. The trial court required the State to elect an incident prior to the testimony of the appellants. The State elected the incident which occurred in Fish River. The other incident of child abuse was clearly admissible as part of the res gestae because it occurred during one of the other charged incidents of rape and sodomy. The jury was clearly instructed as to which act to consider in determining guilt. Thus, there was no violation ofReed v. State, 512 So.2d 804 (Ala.Crim.App. 1987). The State was required to make an election at the appropriate time and the jury was clearly instructed that the child abuse charge only referred to the incident at Fish River.
 IX
In his final argument, Charles Cure sets forth several alleged errors, the cumulative effect of which he contends, denied him his right to a fair trial. We have carefully reviewed the appellant's arguments in light of the record and find that none of them have any merit. The arguments and issues set out by the appellant either were not preserved for our review, are not supported by the record, or do not constitute error.
For the reasons set forth above, this case is due to be, and hereby is, affirmed.
AFFIRMED.
All the Judges concur.
[1] We note that Kathleen Cure was alternatively charged with three counts of aiding and abetting a first degree rape, in violation of § 13A-6-61(a)(3). Because she was convicted of forcible rape, however, no verdicts were returned on these charges.