John Wesley Brown, alias, was convicted of robbery in the third degree, a violation of § 13A-8-43, Code of Alabama 1975, and was sentenced, as a habitual offender, to 22 years' imprisonment.
 I.
Brown claims that the trial court erred in denying his motion under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), because, he says, the prosecution failed to state a race-neutral reason for its peremptory challenges of prospective jurors 213 (C.P.) and 219 (D.R). He also contends that the state's explanation for its strike of prospective juror 59 (R.D.), that it was based on a "gut" feeling, was improper under Batson. The record reveals that after each side exercised its peremptory challenges, Brown objected, arguing that the state had used 4 of its 9 peremptory strikes to remove 4 of the 10 blacks on the jury venire. (R. 6.) The trial court noted that one *Page 873 
of the blacks struck by the state had indicated during voir dire that he knew one of the state's witnesses, Detective Charlie Johnson; Brown agreed that the strike of that veniremember was race-neutral. (R. 9.) Then the following occurred:
 "The Court: I'm going to ask Ms. Huddleston [the prosecutor] to go forward and explain.
 "Ms. Huddleston: And I'm assuming that he's made out a prima facie case?
"The Court: Yes. I've already said that.
 "Ms. Huddleston: You want me to go through all my strikes?
"The Court: No.
 "Ms. Huddleston: Because I can tell you why I struck the white people, too.
 "The Court: Whichever way you think would explain it to me best.
"Ms. Huddleston: All right. 180 saw a TV —
 "The Court: No, no, no. I think we're talking more about the ones —
"Ms. Huddleston: Just black people?
 "The Court: No, no, no. Well, no, we aren't just talking about black people, hopefully. That's what he's saying you did.
"Ms. Huddleston: All right.
 "The Court: What I generally like to look at is the first — you had 18 plus — you had 14 in the box. Let's go to the box first. Are any of those in the box?
"Ms. Huddleston: 59, [R.D.].
"The Court: Yeah, he questioned [R.D.].
 "Ms. Huddleston: She just looked like a nice lady. You know, I ran out of strikes. I was kidding with Mr. Cole [the defense attorney] before we started that I didn't have enough. With the one question about how everybody relied on fingerprints and DNA more than they did a witness's testimony, that kind of threw me. I didn't have enough to cover everybody so I just kind of went on gut.
 "She looked like a very nice lady that might be sympathetic. She ruled in favor of the defense verdict in a civil court once before and she just looked like a very, very nice person who might be sympathetic.
 "The Court: You don't think they should have ruled in favor of the defense over there in civil court? Wouldn't that be the opposite? But let me ask you this.
"Ms. Huddleston: Yes, sir.
"The Court: Let me ask you something, Mr. Cole.
"Mr. Cole: Yes, sir.
 "The Court: You struck number 133, the lady who just got married.
"Mr. Cole: Yes, sir.
"The Court: What was your reason?
 "Mr. Cole: Well, I was also down to the end. One of my main reasons was she had taken some law classes and people who take law classes scare me to some degree.
"The Court: What class had she taken?
 "Mr. Cole: She just said she had taken some law classes I think, Your Honor.
"The Court: She did?
"Mr. Cole: She said she had at college.
"The Court: She had what?
"Mr. Cole: At college she took some law classes.
"Ms. Huddleston: Business law.
"The Court: Where does she work?
 "Ms. Huddleston: She's a CPA with Arthur Anderson.
 "The Court: I've got some questions about [R.D.] but I don't find it. At this juncture here, I haven't found that, so I'm going to rule against you.
 "Mr. Cole: Your Honor, on number 213 and 219, are you going to rule against me on those?
 "The Court: I'm going to rule against you on all of it. The same way that you said about [B.] here, you said she had taken some law classes, I guess you're going on gut.
"Mr. Cole: Well, on —
 "The Court: This is a case where you, I don't know anything about this case, but you seem to indicate that a lack of anything other than some eyewitness is going to be playing an important part. And quite a bit was thrown out in front of that jury, which I think they are prone to accept unless the eyewitness testimony is *Page 874 
mighty strong, and yet you would get somebody off who's had some law. It would seem to me that would be just the opposite. I would want some people who would want scientific evidence. And accountants and engineers always want it. Let's go."
(R. 9-14.) At this point, the trial began.
In his brief to this court, Brown argues that the state did not adequately justify its explanation for its peremptory strike of R.D. At trial, the state asserted that it struck R.D. because it felt that she would be sympathetic (presumably toward the defendant) and because she had served on a civil jury that had rendered a verdict for the defense. While we recognize the difference between an acquittal in a criminal trial and a verdict for the defense in a civil trial, a veniremember's having served on a jury that returned a verdict for a defendant in a civil trial is a race-neutral reason. SeeSumlin v. State, 615 So.2d 1301, 1302 (Ala.Cr.App. 1993) (state offered race-neutral reason for striking black veniremember when it stated that he had served on a criminal jury that had acquitted the defendant and on a civil jury that had returned a verdict for the defendant). Brown argues that the state's reason for its strike — perceived sympathy on the part of R.D. — is not a race-neutral reason. "However, '[a]s long as one reason given by the prosecutor is sufficiently race-neutral, a determination concerning any other reason given need not be made.' Johnson v. State, 648 So.2d 629, 632 (Ala.Cr.App. 1994)." Wood v. State, [Ms. CR-94-0481, July 3, 19961 ___ So.2d ___, ___ (Ala.Cr.App. 1996). The trial court's ruling on aBatson motion is entitled to great deference and we will not reverse such a ruling unless it is clearly erroneous. Ex parteBranch, 526 So.2d 609, 625 (Ala. 1987). Absent any evidence presented by Brown that the state's reasons were pretextual, we cannot say that the trial court's ruling was clearly erroneous.
Brown's challenge to the peremptory strikes of veniremembers C.P. and D.R. is more problematic. The transcript clearly shows that the trial court ruled that Brown had made a prima facie case of "purposeful discrimination." Batson, 476 U.S. at 96,106 S.Ct. at 1722. Once this first step of the three-step analysis under Batson was met, the burden then shifted to the state, which was required to articulate a race- or gender-neutral explanation for striking the prospective jurors in question. Had Brown then challenged the state's explanations as pretextual, the Batson inquiry would have proceeded to the third step. At this step, the trial court would have resolved the factual dispute as to whether the state had intended to discriminate in its use of peremptory challenges. Talley v.State, 687 So.2d 1261, 1266 (Ala.Cr.App. 1996).
However, the transcript of this case reveals that the trial court "short-circuited" the second step of the Batson analysis by denying Brown's motion before the state had offered its explanations for its strikes of all the veniremembers in question. Clearly, once the trial court found that Brown had established a prima facie case of discrimination in the state's exercise of its peremptory strikes, the court should not have proceeded to its factual determination (step three of the analysis) before hearing the state's race-neutral explanations for each of its strikes (step two). Cf. Purkett v. Elem,514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (reversing the judgment of the Court of Appeals for the Eighth Circuit because the Court of Appeals, by requiring the prosecutor's reasons to be both race-neutral and "minimally persuasive," effectively combined step two and step three of the Batson analysis).
The state argues that Brown waived this issue because, it says, he failed to object in the trial court, on the basis that the state had not given its reasons for striking veniremembers C.P. and D.R. We agree. The trial court erred because it denied Brown's motion before it heard all the evidence at theBatson hearing. However, Brown never objected to the court's premature action nor did he otherwise inform the court that the state had not yet given its reasons for striking the veniremembers in question so as to allow the trial court to correct its error.[1] See Ellis v. *Page 875 State, 591 So.2d 574, 575 (Ala.Cr.App. 1991). See also Jacksonv. State, 534 So.2d 689, 691 (Ala.Cr.App. 1988) (the statement of specific grounds of objection waives all grounds not specified; the trial court will not be put in error on grounds not specified at trial).
Even constitutional claims may be waived on appeal if not specifically presented to the trial court. Davis v. State,689 So.2d 225, 226 (Ala.Cr.App. 1996). Moreover, a general Batson
objection preserves only a claim of purposeful discrimination in the non-moving party's exercise of its peremptory challenges. The issue in this case is not whether the trial court's sudden and premature denial of Brown's Batson motion was error; the issue is whether the trial court erred in halting the Batson analysis before the state had articulated its reasons for striking veniremembers C.P. and D.R. As a result, Brown's Batson motion was insufficient to preserve this specific issue. Cf. Ex parte Taylor, 666 So.2d 73, 84 (Ala. 1995), cert. denied, Taylor v. Alabama, 516 U.S. 1120,116 S.Ct. 928, 133 L.Ed.2d 856 (1996) (the defendant's failure to specifically object to the trial court's jury charge on reasonable doubt and his general objection to other jury instructions was insufficient to preserve this issue for appeal). Instead, had Brown, in his objection, informed the trial court that it should not rule on the Batson motion until the state had articulated all of its reasons for its strikes, he would have afforded the court a chance to correct its error and, thereby, would have preserved this issue for appellate review. Ellis.
 " 'An objection, of course, should fairly and specifically point out the particular grounds on which an alleged error occurred in order to inform the trial judge of the legal basis of the objection, thereby affording the trial judge an opportunity to reevaluate his or her initial ruling in light of the grounds alleged and to change it, if deemed necessary.' Ex parte Webb, 586 So.2d 954, 957 (Ala. 1991)."
Covington v. State, 620 So.2d 122, 127 (Ala.Cr.App. 1993). Cf.Reeves v. City of Montgomery, 466 So.2d 1041, 1045 (Ala.Cr.App. 1985) (the rejection by defendant's counsel of the trial court's offer to instruct the jury to consider only evidence adduced at trial, after the defendant overheard a conversation between two jurors in which one juror stated that the defendant had a previous conviction, waived that issue on appeal; had counsel accepted the offer, the trial court, by proper instruction, could have "eradicated" the comment from consideration by the jury).
Because Brown failed to draw the trial court's attention to the error that forms the basis of the specific ground he now raises on appeal, appellate review of this claim is procedurally barred.
 II.
Brown argues that the trial court erred in denying his motion for a judgment of acquittal, made at the close of the state's case, because, he says, the state failed to prove that he used force during the robbery. Section 13A-8-43, Code of Alabama 1975, which defines the offense of robbery in the third degree, states:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
When reviewing a challenge to the sufficiency of the evidence, this court must accept " 'as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' " Faust v. City of Gadsden,639 So.2d 536, 538 (Ala.Cr.App. 1993) (quoting *Page 876 Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, 471 So.2d 493 (Ala. 1985)).
The evidence adduced at trial tended to show that the victim, Ashraf Moshtash, was working in her grocery store in downtown Birmingham, when an individual, whom she identified both in a photographic array and in court as the defendant, John Wesley Brown, entered the store. He went directly behind the check-out counter, picked up Ms. Moshtash's purse, and proceeded to the door. Ms. Moshtash tried to prevent him from taking her purse from the store by grabbing the purse and yelling for help. During the struggle, Brown knocked Ms. Moshtash down. Once he got out of the store, she followed him for a short distance, yelling for help, but he was able to get away. The purse contained personal items such as a bracelet, her credit cards and checkbook, as well as approximately $3000 in cash and checks, representing store receipts she intended to deposit. This evidence was clearly sufficient for the trial court to submit this case to the jury and, if the jury believed Ms. Moshtash's testimony, it was also sufficient to support Brown's conviction of robbery in the third degree. See, e.g.,Wright v. State, 432 So.2d 510, 512 (Ala.Cr.App. 1983) (store employee's testimony that the defendant shoved him into a corner to effect an immediate escape from the store with money from the store cash box was sufficient to prove robbery in the third degree); Harvey v. State, 576 So.2d 680, 681 (Ala.Cr.App. 1991) (store employee's testimony that after she confronted the defendant as he tried to leave the store with merchandise for which he had no receipt, he hit her in the face, took the merchandise and ran, was sufficient to make out a prima facie case of robbery in the third degree). The trial court did not err in denying Brown's motion for a judgment of acquittal.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
[1] Even if, for the sake of argument, we consider Brown's question to the trial court during the Batson hearing, about whether its ruling on the motion included veniremembers 213 and 219, as an objection, that objection was too general to inform the court of its error. See Cure v. State, 600 So.2d 415, 420
(Ala.Cr.App.), cert. denied, 600 So.2d 421 (Ala. 1992); Gamble,McElroy's Alabama Evidence, § 426.01(7) (5th ed. 1996); Rule 103(a)(1), Ala.R.Evid.