The appellant, Jay Bradford, was indicted on June 25, 1997, by the Talladega County grand jury for the attempted murder of Mike Smith. Ala. Code 1975, §§ 13A-6-2 and 13A-4-2. At arraignment, the appellant pleaded not guilty; he was subsequently found guilty by a jury. After a sentencing hearing, the trial court, among other things, sentenced him to 50 years' imprisonment and ordered him to pay a $5,000 fine. The trial court retained jurisdiction for 30 days of the question of restitution. The appellant raises four issues.
The state's evidence tended to show the following. The appellant and his companions, *Page 366 
Ronnie Buckner, Arthur Bradford (hereinafter referred to as Bradford), Anthony Arnold, and Corey Watkins traveled from Sylacauga to Alexander City on the evening of February 22, 1997, in Bradford's girlfriend's automobile, to visit a nightclub; all of them were drinking, smoking marijuana, and at least one was "snorting" cocaine. The appellant's loaded SKS rifle, a 7.62 x 39mm, Russian-military-type weapon, was in the trunk of the automobile placed there by the appellant. After they had been in the nightclub for several hours, a fight "broke out" and in the melee the appellant was cut on the arm. The appellant and his companions then left the club. In the parking lot of the club, the appellant took his rifle out of the trunk of the automobile and began threatening people with it and firing into the air. The group then got in the automobile and headed back to Sylacauga. On the way, they resumed their drinking and use of narcotics; the appellant was sitting in the rear seat of the automobile, directly behind the driver and he was holding his rifle between his legs. As the automobile entered Sylacauga, Sergeant Steve Vickers and Officer Mike Smith of the Sylacauga Police Department, who were in a patrol car, observed that it was speeding and they gave chase. After considerable pursuit, the automobile stopped and Arnold and Watkins jumped out and ran. As the officers approached the automobile, the appellant got out of the automobile on the driver's side with the rifle, and before he ran, he fired several times at Officer Smith; the bullets struck him in the chest, arm, and ankle, severely wounding him. Bradford and Buckner remained at the scene.
The appellant did not testify in his defense, but called several witnesses in an effort to cast doubt upon the state's evidence.[1]
 I. A.
The appellant first contends that the trial court committed reversible error in overruling his motion made pursuant to Batsonv. Kentucky, 476 U.S. 79 (1986), in which he claimed that the state exercised certain peremptory jury strikes in a racially discriminatory manner. In overruling the motion, the trial court found that the appellant had failed to establish a prima facie case of racial discrimination. In Batson, the United States Supreme Court held that black prospective jurors could not be struck from a black defendant's jury based solely on their race. The appellant is black.[2]
The state has the burden of articulating non-discriminatory reasons for challenged strikes only after the defendant meets his burden of establishing a prima facie case of discrimination.Batson, *Page 367 476 U.S. at 978. And, until that burden is met, the state is under no obligation to offer explanations for its peremptory strikes. Edwardsv. State, 628 So.2d 1021 (Ala.Crim.App. 1993); Jackson v. State,594 So.2d 1289 (Ala.Crim.App. 1991). In determining whether a prima facie case of racial discrimination has been established, the trial court is to consider all relevant circumstances that could lead to an inference of discrimination. Its determination on whether a prima facie case of racial discrimination has been established is to be accorded great deference on appeal. Ex parte Branch, 526 So.2d 609
(Ala. 1987); Boyd v. State, 715 So.2d 825 (Ala.Crim.App. 1997), aff'd, 715 So.2d 852 (Ala. 1998). Its finding that a defendant did not present a prima facie case of discrimination under Batson
is reviewed under a "clearly erroneous" standard. Wilson v.State, 690 So.2d 449 (Ala.Crim.App. 1995), aff'd in part, quashed in part, 690 So.2d 477 (Ala. 1997).
In the instant case, the record shows that the prosecutor used 2 of its 10 peremptory strikes to strike 2 of the 5 black veniremembers. Three blacks served on the jury. The appellant relied only on the bare numbers or statistics to support hisBatson motion; he offered no additional supporting evidence. The numbers alone, in this case, will not support a reasonable inference of racial discrimination. The appellant asserts in his brief, in support of his contention on appeal, that the prosecutor used his peremptory strikes to remove a majority of the blacks from the jury panel. The record does not support this assertion. Originally there were seven blacks on the jury venire. Two were properly excused for cause on motion of the state: one for being related to the appellant, and one for stating that, if she were selected, she could not render a fair and impartial verdict based solely on the evidence presented and the court's instructions. The appellant did not object to the granting of these challenges. Of the five blacks remaining, the prosecutor removed two by peremptory strikes and the remaining three served on the jury that tried the case.
All relevant evidence may be examined by the trial court, including the numbers involved, to determine whether an inference of discrimination has been raised. However, "[w]hen considered alone, evidence of the prosecution's use of a large number of its peremptory strikes to exclude black jurors would allow, but would not compel, a finding of prima facie discrimination." Mines v.State, 671 So.2d 121, 123 (Ala.Crim.App. 1995). See also Exparte Thomas, 659 So.2d 3 (Ala. 1994). Even if the prosecution uses all of its peremptory strikes to exclude black veniremembers, a trial court is not required to find that a prima facie case of discrimination if other relevant evidence proves the contrary.Mines v. State.
In the instant case, the appellant obviously failed to meet his burden; thus the trial court's ruling that no prima facie case had been established was not clearly erroneous.
 B.
The appellant further contends that the trial court committed reversible error by granting the state's motion made pursuant toBatson, J.E.B. v. Alabama, 511 U.S. 127 (1994), and WhiteConsolidated Industries, Inc. v. American Liberty Insurance Co.,617 So.2d 657 (Ala. 1993), in which it claimed that the appellant exercised his peremptory strikes in a racially and gender-based discriminatory manner. The appellant argues that the trial court erred in failing to require the state to establish a prima facie case of discrimination before requiring him to explain his strikes. The record shows that of the appellant's 10 peremptory strikes, he struck 9 white males and 1 female. The record does not disclose the race of the female. The trial court granted the state's motion and ordered the appellant to explain his strikes. The appellant explained his strikes, and *Page 368 
the trial court found that his explanations were sufficient and that his reasons were race-and gender-neutral. We find no error here. The ultimate ruling was favorable to the appellant; he suffered no injury. Even if the trial court erred in failing to require the state to make a prima facie showing of racial and gender-based discrimination before requiring the appellant to explain his strikes, and we do not necessarily agree that that is the case, it would be error without injury in this instance. While the trial court did not give its reasons for finding a prima facie case, it could have reasonably concluded that the striking of 9 white males out of 10 peremptory strikes raised an inference of racial and gender-based discrimination under Batson, J.E.B., and WhiteConsolidated Industries, Inc.
 II.
The appellant contends that the trial court violated Rule 16.1(b)(1) and (2), Ala.R.Crim.P., "by holding that he was not entitled to accomplice statements prior to the trial of the case," thereby allegedly committing reversible error. He argues that the failure of the state to furnish him the statements of Bradford, Buckner, and Arnold until they were called to the witness stand by the state to testify at the trial was "fundamentally unfair to the defense" and constituted a denial of due process. Rule 16.1 provides that upon written request of a defendant, the prosecutor shall, within 14 days after the request has been filed in court, disclose to the defendant the substance of any oral statement and permit the defendant to inspect and copy any written or recorded statements of a codefendant or accomplice in the possession of or under the control of the state and which the state intends to offer in evidence at trial. The appellant filed a pretrial discovery motion seeking, among other things, any statements by any accomplice or codefendant, whether oral, written, or recorded, in the possession of the state and which the state intended to use at the trial. The state contends that this issue was not preserved for appellate review because no objection was made on these grounds at trial. We agree. The appellant objected at trial to the use of the statements by the state only on the ground of hearsay. The trial court cannot be placed in error on grounds not asserted, and those not asserted are waived. Jackson v. State,553 So.2d 647 (Ala.Crim.App. 1989); Johnson v. State,421 So.2d 1306 (Ala.Crim.App. 1982).
Moreover, the trial court examined the statements in camera and held that the statements of Bradford, Arnold, and Buckner were not discoverable under Rule 16.1(b)(1) and (2) because they were not accomplices or codefendants, and they did not contain any information pertaining to the appellant that would be exculpatory. The statements of Bradford, Arnold, and Buckner were delivered to the appellant when they were called by the state to testify, and the appellant used their statements extensively in cross-examining them. We find no error in the ruling of the trial court in reference to the discovery motion. It is supported by the record. Thus, even if this issue had been properly and timely preserved for review, we would have found that it was without merit.
 III.
The appellant contends that the trial court erred in overruling his pretrial motion and oral motions made during the trial that the district attorney be removed from prosecuting the case because he was a necessary witness in the case. He relies on Ala.R.Prof. Conduct 3.7, and Waldrop v. State, 424 So.2d 1345
(Ala.Crim.App. 1982), to support his contention. Rule 3.7 provides, in part, that a lawyer shall not act as an advocate at a trial in which he is likely to be a necessary witness. In Waldropv. State, 424 So.2d at 1347, we quoted with approval the holding in State v. Hayes, 473 S.W.2d 688 (Mo. 1971):
 "A prosecuting attorney is not incompetent to be a witness, State v. Stiltner, *Page 369 61 Wn.2d 102, 377 P.2d 252, and the trial court may exercise discretion in determining to what extent and as to what matters he may be permitted to testify. State v. Lee, 203 S.Ct. 536, 28 S.E.2d 402, 149 ALR 1300. However, the general and uniform rule is that the right of a prosecuting attorney to testify in a criminal case `is strictly limited to those instances where his testimony is made necessary by the peculiar and unusual circumstances of the case. Even then, his functions as a prosecuting attorney and as a witness should be disassociated. If he is aware, prior to trial, that he will be a necessary witness, or, if he discovers this fact in the course of the trial, he should withdraw and have other counsel prosecute the case.' Tomlin v. State, 81 Nev. 620, 407 P.2d 1020."
A "necessary witness" is one "who has crucial information in his possession which must be divulged." Universal Athletic SalesCo. v. American Gym Recreational Athletic Equip. Corp.,546 F.2d 530, 538-39 n. 21 (3d Cir. 1976), cert. denied, 430 U.S. 984
(1977); Commerical Credit Loans, Inc. v. Martin, 590 F. Supp. 328,335 (E.D.Pa. 1984). The necessity standard requires more than mere speculation that counsel will be required to testify.Electronic Laboratory Supply Co., Inc. v. Motorola, F. Supp. [Civ.A. No. 88-4494, July 3, 1990) (E.D.Pa. 1990).
The appellant alleged in his motions that the district attorney's pretrial conversations with Bradford made the district attorney a necessary witness. He refers to a discussion between the district attorney and Bradford and Bradford's parents before trial wherein Bradford agreed to cooperate with the state and testify against the appellant. The district attorney did not testify for the state, but was called as a witness by the appellant, who questioned him about an unrelated matter, his participation in drafting a search warrant and affidavit to search the Bradford residence. Defense counsel did not question the district attorney about his discussion with Bradford and his parents.
Clearly, the district attorney's conversation with Bradford and his parents, and his participation in the drafting of the search warrant and affidavit, under the circumstances here, would not make him a necessary witness in the trial of the case. The trial court did not abuse its discretion in overruling the motions.
 IV.
Last, the appellant questions the sufficiency of the evidence to support his conviction for attempted murder, and argues that the state failed to prove a prima facie case. He preserved this issue for review by moving for a judgment of acquittal at the conclusion of the state's case-in-chief.
The elements of the crime of attempted murder are intent to kill and an overt act towards commission of that act. Chaney v.State, 417 So.2d 625 (Ala.Crim.App. 1982).
 "It is clear that `[a]ttempted murder is a specific intent crime' which requires the State to `prove that the accused acted with the intention of taking the life of another.' Paige v. State, 494 So.2d 795, 796
(Ala.Cr.App. 1986). See Ala. Code 1975, §§ 13A-4-2(a) and 13A-6-2(a)(1). However, `the element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, [and]it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.' Johnson v. State, 390 So.2d 1160, 1167 (Ala.Cr.App.), cert. denied, 390 So.2d 1168 (Ala. 1980). Accord, Fears v. State, 451 So.2d 385, 387 (Ala.Cr.App. 1984); Young v. State, 428 So.2d 155, 158 (Ala.Cr.App. 1982)."
Jones v. State, 591 So.2d 569, 574 (Ala.Crim.App. 1991). *Page 370 
In the instant case, the state presented evidence in its case-in-chief that showed that the appellant put his loaded SKS, 7.62 x 39mm rifle in the trunk of the automobile Bradford was driving before they left Sylacauga for a nightclub in Alexander City; that he was cut on the arm in a fight at the nightclub; that, while in the parking lot of the nightclub, he took his rifle from the trunk of the automobile and threatened people with it and fired it several times; and that on the return trip to Sylacauga, he sat in the backseat of the automobile, immediately behind the driver and on the driver's side of the vehicle, holding his rifle between his legs. This evidence came from statements and testimony of Bradford, Buckner, and Arnold. The state's evidence showed that after the automobile was stopped by the police in Sylacauga in the early morning hours, and as Officer Smith approached the automobile from the rear, a door opened on the driver's side toward the rear and someone with a gun fired at him three times, hitting him in the chest, arm, and ankle; that as Officer Vickers approached the automobile from the opposite side, he heard Officer Smith "holler," "Gun!" and he immediately heard a succession of shots come from the driver's side of the automobile, and heard Smith cry out, "Steve, I am hit;" that Vickers saw a black male standing on the driver's side of the automobile with a "long rifle," and he fired his pistol at the person as the person fled from the scene; that neither Smith nor Vickers could identify the person they saw with the gun; that Buckner testified that he heard three shots from the rifle come from the driver's side of the automobile and then some pistol shots; that Arnold testified that the appellant was sitting in the rear of the automobile behind the driver and was holding the rifle when he, Arnold, got out of the automobile and ran; and that as he ran, he heard three shots from the rifle and then some pistol shots. The state's evidence further showed that the appellant's blood, which came from the cut on his arm he received in the nightclub, was found on the driver's headrest in the automobile and on a T-shirt in his home; and that blood was found on the rifle, but tests on it were inconclusive. The state's evidence further showed that the rifle was found in the yard of a house next-door to the appellant's residence; that ammunition for the rifle was found in the appellant's bedroom; that the box the rifle came in when purchased by the appellant was also found in his bedroom; and that the state presented evidence that the appellant had previously purchased the rifle from a gun dealer. The state's evidence further showed that the empty shells found at the scene of the incident and in the parking lot of the nightclub in Alexander City were fired by the appellant's rifle, and that the shells found in his bedroom were of the same type; that the bullet fragments recovered from the body vest armor worn by Officer Smith at the time he was shot were fired from a 7.62 x 39 mm SKS rifle; and that the body armor, which contained a "trauma plate," probably saved his life. The state's evidence showed that the wounds sustained by Officer Smith required six days of hospitalization and three operations, and resulted in permanent nerve damage to his hand, arm, and ankle.
This review of the facts and circumstances convinces us that the evidence presented by the state was sufficient to allow the jury to conclude, by fair inference, that the appellant shot Officer Smith with the SKS rifle with the intent to murder him. While the evidence of the actual shooting was largely circumstantial, it was strong and convincing and sufficient for the jury to have reasonably found that the state's evidence excluded every reasonable hypothesis except that of the appellant's guilt and to have found the appellant guilty beyond a reasonable doubt. See Cumbo v. State, 368 So.2d 871 (Ala.Crim.App. 1978). The appellant's efforts to cast doubt on the state's case were weak and obviously ineffective. The denial of the appellant's motion for a judgment of acquittal was proper *Page 371 
and supported by the evidence. The case was properly submitted to the jury.
For the reasons stated above, the judgment of the circuit court is due to be, and it is hereby, affirmed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
Affirmed.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
[1] Bradford, Arnold, and Buckner were never charged with a crime. Watkins was indicted for attempted murder and soliciation to commit murder; he pleaded guilty to solicitation to commit murder. The decision to indict Watkins was obviously motivated by his comments just before the automobile came to a stop, when he said to the others in the automobile, "When this mother fucker stop[s] we going to bust these bitches [obviously referring to the police officers]," and "we are going to come out shooting," and the fact that he was armed with a pistol. All the occupants of the automobile, except the appellant, gave statements to that effect to the police shortly after the incident or testified before a grand jury.
[2] The United States Supreme Court extended its decision inBatson to white defendants in Powers v. Ohio, 499 U.S. 400
(1991); to civil cases in Edmonson v. Leesville Concrete Co.,500 U.S. 614 (1991); and to defense counsel in criminal cases inGeorgia v. McCollum, 505 U.S. 42 (1992). Recently the Alabama Supreme Court held that Batson applies to the striking of prospective white jurors. White Consol. Indus., Inc. v. AmericanLiberty Ins. Co., 617 So.2d 657 (Ala. 1993). In 1994, the United States Supreme Court extended Batson to apply to gender-based strikes in J.E.B. v. Alabama, 511 U.S. 127 (1994).