KELLUM, Judge.
The appellant, Antavis Davon Mills, was indicted by a Dale County grand jury for attempted murder, see § 13A-6-2 and § 13A-4-2, Ala.Code 1975; kidnapping in the first degree, see § 13A-6-43, Ala.Code 1975; and felony murder, see § 13A-6-2(a)(3), Ala.Code 1975. Following a jury trial, Mills was convicted of all three charges. The circuit court sentenced Mills to 33 years’ imprisonment for each conviction and ordered that the sentences were to run concurrently.
The evidence presented at trial established the following. On a June evening in 2009 around 6:00 p.m. or 7:00 p.m., Deme-tri Brown telephoned Trent Clark and asked Clark to sell him some marijuana. Demetri and Clark arranged to meet at the Claybank Apartments in Ozark. When Demetri arrived at the apartments, he saw Clark sitting in a Honda automobile with another man, who Demetri did not know. Demetri got into the backseat of the car and they drove to a nearby house where the men got out of the Honda and got into a black automobile. Clark then drove with Mills and Demetri to get the marijuana.
After driving for approximately 30 minutes, Clark suddenly pulled the car over, pointed a pistol at Demetri, and accused Demetri of robbing him. Demetri knew that Clark had been robbed, but he denied any involvement in the robbery. Clark hit Demetri hard with his gun, causing Deme-tri to bleed. Clark pulled back onto the road and, with Demetri still in the car, drove to a wooded area. Clark then ordered Demetri to get out the car or he would shoot Demetri. Demetri begged Clark to make one telephone call that would prove Demetri’s innocence but Clark refused. At this point, Clark forced Demetri to get into the trunk of the car.
Around 8:00 or 9:00 p.m. that evening, Clark, accompanied by another man, came to the house of Lashawn Tanner. Clark, who was Tanner’s barber, asked Tanner if he could fish in a pond on Tanner’s property the next morning. Tanner gave Clark permission to fish in his pond but told Clark that he would not be there at that time but that his wife, Shana, would be home. Clark left Tanner’s home in a black car with tinted windows. Demetri remained in the trunk of the car throughout the night.
The following morning between 7:30 and 8:30 a.m., Clark and Mills visited the apartment of Cameron Brown. Cameron did landscaping work for Clark and knew Mills through Clark. Clark asked Cameron to come with him to do some landscaping work. Cameron got into a car with Clark, who drove, and Mills, who was in the front passenger seat. Cameron testified that Clark and Mills were together frequently and that they sold drugs together. While riding in the car with Clark and Mills, Cameron noticed “thousands of dollars” wrapped with a rubber band in the middle console of the car. Cameron also saw two pistols in the car.
After driving for a while, Clark turned off onto a dirt road, stopped the car, and opened the trunk. In the trunk, Cameron saw Demetri — beaten, bloody, and wearing only shorts. Clark pulled Demetri out of the trunk of the car, and Mills tied Deme-tri’s hands behind his back with string from a weed-eater. Clark identified Dem-etri as “one of them MF’s that robbed me.” (R. 68.) Clark said that he was going to shoot Demetri but Cameron begged him not to shoot Demetri, saying that he wanted no part of it. Cameron testified that Mills stood close by and stayed silent during this exchange. Short *502 ly thereafter, Clark agreed to take Cameron back to his apartment.
Clark pulled into Cameron’s apartment complex and parked his car behind a dumpster. Clark took Demetri out of the trunk, gave a pistol to Mills, and told Mills to watch Demetri while Clark went to the store. Following Clark’s instructions, Mills watched Demetri while holding the pistol Clark gave him. Mills retied Deme-tri’s hands using the cord of a cellular-telephone charger and threatened to shoot Demetri if he tried to run. When Clark returned from the store, Cameron tried to reason with Clark not to shoot Demetri, but Clark dismissed him. Cameron then left Clark, Mills, and Demetri and went into his apartment. ' Clark and Mills put Demetri back into the trunk of the car and drove off.
Clark eventually stopped the car near the pond and pulled Demetri out of the trunk. Clark told Demetri: “You know what’s about to happen to you.” (R. 184.) Mills took a knife from Clark and cut a piece of netting out of the trunk of the car, which Mills then used to tie a cinder block to Demetri’s feet. Unable to walk with his feet tied, Mills cut Demetri’s feet loose from the cinder block. Unbeknownst to Clark and Mills, while he was in the trunk of the car, Demetri had managed to loosen the cord used to tie his hands together but pretended that his hands were still tied together at that time.
At Clark’s instruction, Demetri began to walk toward the pond with Mills following behind them. Clark told Demetri to get into the pond. Clark then got in the water with Demetri and hit Demetri in the forehead with a gun. With his hands loose, Demetri grabbed the gun from Clark and began fighting for control of the gun. Mills also entered the water and struggled for the gun, grabbing Demetri by the hair. While both Clark and Demetri had their hands on the gun, the gun discharged twice and Clark let go of the gun. Clark sustained a gunshot wound during the struggle and cried out for help. Mills dragged Clark away.
Shortly thereafter, Shana Tanner heard something while standing on her back porch. Shana looked up to see Mills trying to carry Clark on the path leading to her pond. Shana ran to them and found Clark unconscious. Clark was subsequently taken to the hospital, where he died as a result of a gunshot wound.
Mills testified on his own behalf at trial. Mills stated that Clark picked him up to go fishing. According to Mills, Demetri was already in the trunk of the car when Clark picked him up. Mills testified that Clark gave Cameron the pistol to watch Demetri before putting Demetri back in the trunk of the car. Mills stated that he told dark that he wanted to go home and that he wanted no part of what Clark was doing. Mills denied that he knew that Clark intended to shoot Demetri.
After both sides had rested and the court instructed the jury on the law applicable to Mills’s case, the jury found Mills guilty of the attempted murder of Deme-tri, felony murder as to Clark, and first-degree kidnapping of Demetri. This appeal followed.
I.
Mills contends on appeal that the circuit court erred by denying his motion for a judgment of acquittal because, he argues, the State failed to present sufficient evidence to sustain his convictions for felony murder, attempted murder, and kidnapping. Specifically, Mills contends that the evidence was insufficient to find him guilty of the indicted offenses as either a principal or an accomplice.
*503 ‘““In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim. App.1984), affd, 471 So.2d 493 (Ala. 1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.”’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040,1042 (Ala.1978).
“ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala. Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’ ”
Gavin v. State, 891 So.2d 907, 974 (Ala. Crim.App.2003), cert, denied, 891 So.2d 998 (Ala.2004) (quoting Ward v. State, 610 So.2d 1190,1191 (Ala.Crim.App.1992)).
Under current Alabama law, there is no distinction between principals and accessories. See, e.g., Faircloth v. State, 471 So.2d 485, 489 (Ala.Crim.App.1984), affd, 471 So.2d 493 (Ala.1985) (“Alabama Code § 13A-2-23 (1975) continues the long recognized abolition of the distinction between principals and accessories in Alabama.”). As we noted in Peraita v. State, 897 So.2d 1161, 1210 (Ala.Crim.App.2003):
“Alabama’s accomplice liability statute provides:
“ ‘A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
[[Image here]]
“ ‘(2) He aids or abets such other person in committing the offense.... ’ “ § 13A-2-23, Ala.Code 1975.
“‘The words “aid and abet” encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary. Wright [v. State, 494 So.2d 936 (Ala. Crim.App.1986) ]; Sanders v. State, 423 So.2d 348 (Ala.Cr.App.1982). Actual participation in the crime need *504 not be proved by positive testimony to convict someone of aiding and abetting. “The jury is to determine whether the appellant’s participation exists and the extent of it from the conduct of the parties and all the testimony presented.” Walls v. State, 378 So.2d 1186, 1191 (Ala.Cr.App. 1979), cert, denied, Ex parte Walls, 378 So.2d 1193 (Ala.1980). Such facts as the defendant’s presence in connection with his companionship, and his conduct at, before and after the commission of the act, are potent circumstances from which participation may be inferred.’
“Henry v. State, 555 So.2d 768, 769 (Ala. Crim.App.1989).
“ ‘Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether or not the one so contributing is present, brings the accused within the statute that makes any person concerned in the commission of a felony, directly or indirectly, a principal.... No particular acts are necessary to make one an aider and abettor; the common enterprise or adventure may have been entered into on the spur of the moment without prearrangement or participation.’
“Scott v. State, 374 So.2d 316, 318-19 (Ala.1979).”
A.
Mills first contends that he cannot be held liable under the felony-murder doctrine because Clark’s death was caused by Clark’s conduct and actions, and not Mills’s own actions.
A person commits the crime of felony murder if “[h]e commits or attempts to commit ... kidnapping in the first degree ... or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.” § 13A-6-2(a)(3), Ala.Code 1975 (emphasis added). Contrary to Mills’s contention on appeal, Mills’s participation in the kidnapping and attempted murder of Demetri was sufficient to charge him with felony murder. The evidence presented at trial established that Mills participated in kidnapping Demetri and assisted in Clark’s plan to murder Demetri. Therefore, Mills is not entitled to relief on this claim.
Mills also contends that the evidence was insufficient to convict him for felony murder because, he argues, he was not a willing participant in the underlying felonies of attempted murder and kidnapping. Mills specifically contends that he did not actively and intentionally participate in the kidnapping. Contrary to Mills’s contention on appeal, the evidence presented at trial, when viewed in a light most favorable to the State, established that Mills willingly assisted Clark when Clark held Demetri in the trunk of Clark’s car and eventually took Demetri to a pond where Clark intended to kill Demetri. Mills tied Deme-tri’s hands together. At Clark’s direction, Mills held a gun to Demetri while Clark went to the store. Mills then retied Dem-etri’s hands and threatened to shoot Dem-etri if he ran. Mills subsequently tied a cinder block to Demetri’s feet after Clark drove Demetri to the pond. At no time during the course of events, did Mills try to stop Clark from harming Demetri or try to help Demetri get away. Accordingly, Mills’s challenge to his felony-murder conviction on the basis that he was not a willing participant in the attempted murder and kidnapping of Demetri must fail.
*505 Finally, in attacking his conviction for felony murder Mills contends that Clark’s death was the result of an “unforeseen supervening, intervening cause sufficient to break the chain of causation” and, therefore, was not the result of conduct on the part of Mills. (Mills’s brief, p. 17.) Specifically, Mills contends that Demetri’s struggle with Clark over the gun was a supervening factor in Clark’s death. Section 13A-2-5, Ala.Code 1975, addresses causation, in pertinent part, as follows:
“(a) A person is criminally liable if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient.
“(b) A person is nevertheless criminally hable for causing a result if the only difference between what actually occurred and what he intended, contemplated or risked is that:
“(1) A different person or property was injured, harmed or affected;
[[Image here]]
This Court addressed causation in the context of felony murder in Witherspoon v. State, 83 So.3d 625 (Ala.Crim.App.2009). In Witherspoon, two masked men, Wither-spoon and Baggett, entered a convenience store; Baggett was holding a gun. The store clerk grabbed his own gun and shot Baggett. In upholding Witherspoon’s conviction for felony murder, this Court stated:
“ ‘[Fjoreseeability is the key issue in a causation inquiry. The “controlling question! ]” is “whether the ultimate result was foreseeable to the original actor.” Henderson v. Kibbe, 431 U.S. 145, 151 n. 9, 97 S.Ct. 1730, 1735 n. 9, 52 L.Ed.2d 203 (1977). If the accused “should have perceived” that his own conduct would concur with another cause to bring about the injury to the victim, then the other cause is concurrent, not supervening. See Shirah v. State, 555 So.2d 807, 812-13 (Ala.Cr. App.1989) (conduct of accused, who supplied morphine to victim, was the cause-in-fact of victim’s death from overdose of Secobarbital and morphine combined). On the other hand, a supervening cause “breaks the chain of causation” precisely because it is not a reasonably foreseeable result of the accused’s conduct. Lewis [v. State], 474 So.2d [766, 771 (Ala.Crim.App.1985) ].’ ”
Witherspoon, 33 So.3d at 628-29 (quoting Pearson v. State, 601 So.2d 1119, 1127 (Ala.Crim.App.1992)).
Resolving the issue of causation, this Court held that, but for the acts of Wither-spoon and Baggett entering the store wearing masks, demanding money, and carrying a gun, the store clerk would not have used his own gun to shoot and kill Baggett. Witherspoon, 33 So.3d at 631. Furthermore, the store clerk’s reactions to Witherspoon and Baggett’s conduct were not abnormal or unforeseeable, given the actions of the participants in the robbery. Witherspoon, 33 So.3d at 631.
In this case, as in Witherspoon, Deme-tri’s actions were not abnormal or unforeseeable. Clark and Mills kept Demetri in the trunk of a car at gunpoint for hours with his hands tied behind his back. During this time, Clark and Mills repeatedly threatened to kill Demetri. Clark and Mills then took Demetri to a remote spot where they intended to shoot Demetri. But for Clark and Mills’s actions, Demetri would not have struggled with Clark for the gun, which ultimately led to Clark sustaining a fatal gunshot wound. Given the circumstances surrounding Demetri’s kidnapping and Clark’s intent to shoot Demetri, it is foreseeable that Demetri *506 would straggle to save his life. Therefore, Mills is not entitled to relief on this claim.
B.
Mills further contends that the State presented insufficient evidence from which the jury could conclude that he attempted to murder Demetri. Specifically, Mills contends that the State presented no evidence indicating that Mills intended to kill Demetri while acting as either a principle or an accomplice.
“The elements of the crime of attempted murder are intent to kill and an overt act towards commission of that act.” Bradford v. State, 734 So.2d 364, 369 (Ala. Crim.App.1999) (citing Chaney v. State, 417 So.2d 625 (Ala.Crim.App.1982)).
“.‘Attempted murder is a specific intent crime.... An attempt to commit murder requires the perpetrator to act with the specific intent to commit murder .... A general felonious intent is not sufficient.’ Free v. State, 455 So.2d 137, 147 (Ala.Cr.App.1984). To establish a prima facie case of attempted murder, the State must present evidence of the accused’s specific intent to kill, and of ‘some overt act in part execution of the intent to commit the crime ... which falls short of the completed crime; the difference between attempt and commission being that the act or step fails to produce the result intended.’ Broad-head v. State, 24 AlaApp. 576, 139 So. 115,117 (1932).”
Minshew v. State, 594 So.2d 703, 704 (Ala. Crim.App.1991).
Contrary to Mills’s contention on appeal, the State presented sufficient evidence from which the jury could have con-eluded that Mills aided and abetted Clark in attempting to murder Demetri. With Demetri in the trank of Clark’s car, Mills road with Clark to pick up Cameron. After picking up Cameron, Clark pulled Demetri out of the trunk and Mills tied Demetri’s hands together. Clark repeatedly threatened to shoot Demetri while Mills stood silent. Mills also threatened to shoot Demetri while holding a gun to Demetri’s head. After driving to the pond, Mills tied a cinder block to Deme-tri’s feet and followed Clark and Demetri to the pond, where Clark hit Demetri in the forehead with the gun. Mills followed Clark and Demetri into the water where Mills grabbed Demetri’s hair and a struggle ensued. Viewing the evidence in a light most favorable to the prosecution, we conclude that Mills’s actions evidenced his complicity in attempting to murder Deme-tri. Accordingly, the evidence was sufficient to sustain Mills’s conviction for attempted murder.[1]
II.
Finally, Mills contends that the circuit court erred by denying his motion to dismiss the indictment for kidnapping in the first degree because the charge served as a basis for his felony-murder conviction and, therefore, charging him with the separate offense violated his right to be free from double jeopardy. The State concedes that Mills’s conviction for kidnapping in the first degree violates double-jeopardy principles. We agree.
In this case, the same kidnapping served as the basis for both Mills’s first-degree-kidnapping conviction and his felony-murder conviction. Therefore, Mills’s convictions for both offenses violate double-jeop *507 ardy principles. See Witherspoon v. State, 33 So.3d 625 (Ala.Crim.App.2009); Jones v. State, 992 So.2d 76 (Ala.Crim.App.2007); Brooks v. State, 952 So.2d 1180 (Ala.Crim. App.2006); Edwards v. State, 907 So.2d 1077 (Ala.Crim.App.2004). Accordingly, we must remand this case for the circuit court to enter an order vacating Mills’s conviction and sentence for kidnapping in the first degree. The circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 42 days after the release of this opinion.
AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.*
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Mills also challenges the sufficiency of the evidence to support his conviction for kidnapping in the first degree; however, because Mills’s conviction for first-degree kidnapping must be vacated, we need not address the merits of his claim challenging the sufficiency of the State’s evidence relating to the kidnapping charge.

 Note from the reporter of decisions: On September 27, 2013, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On December 13, 2013, that court denied rehearing, without opinion.