[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17417
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00399-WHA-TFM


CALVIN LEON MASSEY,

Petitioner-Appellant,

versus

WARDEN,
ATTORNEY GENERAL STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 7, 2018)

Before WILSON, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Calvin Leon Massey, an Alabama state prisoner proceeding pro se, appeals the district court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus.  Massey contends his guilty plea in state court to two counts of attempted murder was not entered knowingly and voluntarily because he did not understand the nature of the charges against him, his guilty plea was coerced, and there was no factual basis for his plea.[1]  After review, we affirm because Massey has not shown that the Alabama appellate court's decision denying his guilty-plea claims was an unreasonable application of clearly established federal law or based on an unreasonable application of the facts in light of the evidence presented.

## I.  BACKGROUND FACTS

### A.    Offense Conduct and Attempted Murder Charges

Massey's attempted murder convictions arise out of a September 28, 2010 domestic dispute with his former girlfriend, Lavonette Jones, and her 19-year-old son, Carviss Jones, outside of an elementary school.  During the confrontation, Massey produced a handgun and fired shots at both Lavonette and Carviss Jones.  Massey shot Lavonette Jones in the leg and the chest, but his shots missed her son.

According to the state trial court's record, Massey was arrested on September 28, 2010, the same day that Massey shot at the victims.  One day later,

---

[1]Massey also argues that his equal protection rights were violated when he was charged with attempted murder instead of assault, but we do not consider this claim because it is outside the scope of the certificate of appealability.  See Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998).

on September 29, 2010, Massey was charged with two counts of attempted murder by separate criminal complaints. One complaint charged Massey with "the intent to commit the crime of MURDER, attempt to intentionally cause the death of another person, to wit: Lavonetta Jones, by SHOOTING him/her with a HANDGUN." The other complaint charged Massey with "the intent to commit the crime of MURDER, attempt to intentionally cause the death of another person, to wit: CARVISS by SHOOTING AT HIM [sic] him/her with a HANDGUN." Furthermore, the record shows that Massey was "advised of [the] charges" at an initial hearing on September 30, 2010, in the District Court of Montgomery County, before the case was transferred to the Circuit Court of Montgomery County, Alabama.

On June 17, 2011, a grand jury in the Circuit Court indicted Massey on two counts of attempted murder, in violation of Alabama Code §§ 13A-4-2 and 13A-6-2. Count I of the indictment alleged that Massey, "with the intent to cause the death of another person, attempt[ed] to cause the death of Lavonette Jones by shooting her with a gun." Count II alleged that Massey, "with intent to cause the death of another person, attempt[ed] to cause the death of Carviss Jones by shooting at him with a gun."

Under Alabama law, the two elements of the crime of attempted murder are: (1) intent to kill; and (2) an overt act toward the commission of that act. Bradford

v. State, 734 So. 2d 364, 369 (Ala. Crim. App. 1999).  Thus, there is no requirement that a defendant admit he intended to kill a victim for a jury to convict him of attempted murder.  Rather, the element of intent to kill "may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances."  Id.

Massey had three prior felony convictions: (1) a state conviction for manslaughter; (2) a state conviction for unlawful possession of a controlled substance; and (3) a federal conviction for possession of cocaine.  Because of these prior convictions, Massey was subject to the Alabama Habitual Offender Act, Alabama Code § 13A-5-9, which provided for a mandatory sentence of life imprisonment either with or without the possibility of parole.

## B.    Pretrial Competency Evaluation

Before trial, the state trial court referred Massey for a competency evaluation.  The clinical psychologist who conducted the forensic evaluation noted in his written report, among other things, that: (1) Massey had graduated from high school with a regular diploma; (2) Massey had obtained a bachelor's degree in biology from Alabama State University; (3) Massey had never received mental health treatment or been psychiatrically hospitalized, and (4) the mental status exam yielded normal results, including good cognitive skills.  The psychologist opined that, at the time of the September 21, 2011 evaluation, Massey "understood

the nature and seriousness of the charges against him, could assist his legal counsel in his own defense, and proceed with a reasonable understanding of the legal proceedings against him."

## C.    Plea Negotiations and Guilty Plea

Also prior to trial, Massey, through counsel, offered to plead guilty to a reduced charge of second degree assault, but the state prosecutor refused this offer. The state advised Massey's counsel that if Massey pled guilty to both counts as charged, the state would consider not asking for a sentence of life without parole.

The trial began on February 27, 2012, and the jury was selected. After jury selection, Massey decided to plead guilty to both counts. In preparation, Massey's counsel reviewed with him an Explanation of Rights and Guilty Plea form, also called an Ireland form,[2] which Massey and his counsel both signed. The Ireland form stated that Massey was charged with two counts of attempted murder, which was a Class A felony, and that the possible sentences for a defendant convicted of a Class A felony who has three or more prior felonies was either (1) mandatory life imprisonment or (2) life imprisonment without the possibility of parole. The Ireland form informed Massey of all of the rights he was waiving by entering a

---

[2]Ireland v. State, 250 So.2d 602, 603 (Ala. Crim. App. 1971) (concluding a defendant's guilty plea was entered voluntarily and understandingly where the defendant signed a lengthy form explaining his criminal trial rights, his attorney told him to read the form before signing it, and the trial court asked the defendant if he had read the form and advised the defendant that if he did not understand the form, the court would explain it to him).

5

guilty plea including, inter alia, his right to appeal any issue unless it was expressly reserved.

The Ireland form also contained a certification above defense counsel's signature, wherein defense counsel certified that the defendant was entering a voluntary and intelligent guilty plea and that counsel had not forced or induced the defendant to plead guilty, as follows:

> I certify that the above was fully read and/or explained to the defendant by me; that I explained the penalty or penalties involved with the defendant; that I discussed in detail the defendant's rights and the consequences of pleading guilty; and that, in my judgment, the defendant understands the same and that he/she is knowingly, voluntarily, and intelligently waiving his/her rights and entering a voluntary and intelligent plea of guilty. I further certify to the court that I have in no way forced or induced the defendant to plead guilty and to my knowledge no one else has done so.

Likewise, Massey signed the Ireland form and certified to the court that he understood the charges against him, that he was guilty of those charges, and that he was satisfied with his attorney, as follows:

> I certify to the court that I have read the matters set forth above or have had them read to me; that my rights have been discussed with me in detail and fully explained; that I understand the charge or charges against me; that I understand my rights, the punishment or punishments provided by law as they may apply to my case, and I understand the consequences of pleading guilty; that I am not under the influence of any drugs, medicines, or alcoholic beverages; and I have not been threatened or abused or offered any inducement, reward, or hope of reward to plead guilty other than the terms of the plea agreement which will be stated on the record.
>
> I further state to the court that I am guilty of the charge to which I am entering a plea of guilty, that I desire to plead guilty, that I

6

made up my own mind to plead guilty, and that I knowingly, intelligently, and voluntarily waive my right to a trial in this case. I further state to the court that I am satisfied with my attorney's services and his/her handling of my case.

(emphasis added).

At the plea hearing, Massey stated to the trial court that he "want[ed] to accept responsibility for [his] crime," but that he believed "the DA's office [was] not charging [him] correctly." Massey claimed that he was originally arrested on a charge of first degree assault, but that the state later "upped the charge to attempted murder."[3] Massey contended that Lavonette Jones's medical records and the extent of her injuries were consistent with assault, but not with attempted murder.

Massey acknowledged, however, that if he "roll[ed] the dice" and went to trial, he might get a sentence of life imprisonment without parole. Massey then asked the state trial court if his prior federal conviction would count as a prior offense for sentencing purposes. The trial court confirmed that Massey had three prior felony convictions for purposes of Alabama's Habitual Offender Act. The trial court advised Massey that, if he was convicted of what he was currently charged with, attempted murder, he faced a punishment of either "life or life without the possibility of [parole]" and that the trial court would choose one of

---

[3]There is no support in the record for Massey's assertion that he was originally charged with assault and that the state later "upped" the charges to attempted murder.

7

those two punishments in its discretion based on the evidence in the case, the victims' statements, the pre-sentence report, and the arguments of counsel.

Massey stated again that he was originally arrested for assault and that he and his counsel "thought the DA would be able to work something out because of the extent of [the] injuries and because it was not a shooting case." Massey's counsel advised the trial court that the state had refused her offer for Massey to plead guilty to second degree assault, which would have reduced Massey's sentencing range to twenty years. After the prosecutor confirmed that the state was unwilling to reduce the charges, the trial court stated to Massey, "The choices you have are to either plead guilty as charged, which would be I believe two counts of attempted murder" or "in the alternative you can have a jury trial" and let the jury "make[ ] the decision about whether you are guilty of this charge or some other charge or guilty [at] all."

Massey asked the state trial court to confirm that the court would look at the evidence and have the discretion to choose the sentence, and the trial court so confirmed. Massey also asked why the state was unwilling to negotiate a plea deal, and the prosecutor stated that she believed she had "sufficient evidence to convict the defendant as charged." The prosecutor confirmed, however, that if Massey agreed to plead guilty to both counts as charged, the state would consider recommending a sentence of life imprisonment with the possibility of parole.

8

After this exchange, defense counsel advised the state trial court that Massey had signed the Ireland form and was ready to enter a guilty plea. The trial court then conducted a plea colloquy in which Massey confirmed that he understood: (1) the two possible sentences; (2) that he had the right to plead not guilty and have a jury trial, the right to see, hear, confront, and cross-examine witnesses, and the right to testify; (3) that he was waiving these rights by pleading guilty and that he wanted to plead guilty; (4) that no one had promised him anything or had forced him to plead guilty, and that he was pleading guilty voluntarily. The trial court asked Massey how did he plead, and Massey responded, "guilty." The case action summary for the plea hearing indicates: (1) that Massey waived the reading of the indictment, and (2) that his plea was voluntary. While the trial court also did not make an explicit finding in open court that Massey's plea was voluntary, the judge did sign the case action summary stating that the plea was voluntary.

At the state trial court's prompting, the prosecutor proffered the factual basis for Massey's guilty plea, as follows:

> The State would expect the evidence to show on or about September 28, 2010 at T. S. Morris Elementary here in Montgomery County, the defendant with the intent to cause the death of the victims attempted to cause their death by shooting at them with a gun. The first victim being Lavonette Jones. He shot her three times. He shot Carviss Jones, who was protecting his mother during the shooting.

(emphasis added). Massey did not object to anything in the facts recited as the factual basis for his plea offer. More importantly, those facts satisfied the two

9

elements of attempted murder: (1) intent to cause the death of the victims; and (2) the overt act of shooting at them with a gun.  The trial court accepted Massey's plea and adjudicated Massey guilty.  Massey's counsel advised the trial court that the prosecutor had indicated that she did not have a problem with the court imposing a life sentence, and the trial court stated it had made a note that the sentence "is life rather than life without" parole.

### D.    Sentencing

At his April 5, 2012 sentencing, Massey told the court that at his plea hearing, he felt pressured into pleading guilty because his defense counsel had told him it would not be good to take his case to trial and the prosecutor had "promised to give [him a] life without [parole] sentence" if he did go to trial.  Massey stated that he had written his counsel "several times asking what constitutes attempted murder."[4]  Massey said he knew the elements of first degree assault included the intent to cause physical injury to a person and the act of causing a serious physical injury.  Massey contended that there was evidence, including the medical report, to support his claim that he did not intend to harm Lavonette Jones and that "if [his conduct] isn't Assault I, then how can it be attempted murder?"  Massey clarified that he wanted to preserve his right to appeal if he later learned that what he had

---

[4]The record contains two handwritten letters from Massey addressed to his trial counsel, dated after the plea hearing but before the sentencing hearing, in which Massey asked her for information on the elements of attempted murder and asked her to subpoena Lavonette Jones's doctors to appear at his sentencing hearing to testify about the extent of her injuries.

pled guilty to "doesn't constitute attempted murder" and to argue that his indictment charging attempted murder was void. Massey stated again that Lavonette Jones's medical records showed her injuries from gunshots were not life threatening and that her son was unharmed.

At this point, Massey's defense counsel stated that she had "gone over this several times" with Massey, and, based upon her conversations with Massey, defense counsel had advised him that he should ask to withdraw his plea. Defense counsel then asked the trial court to withdraw Massey's plea because "he does not believe that the charges against him as they stand today are valid." Massey responded: "I am not trying to go to trial on this. I am just asking that I receive justice." When the trial court asked Massey if by justice, he meant "go home," Massey assured the court that he accepted responsibility, but merely wanted to preserve his right to appeal on the ground that the facts did not constitute attempted murder, as follows:

> No, no, no. I take full responsibility for what I did, Your Honor. But the fact doesn't fit the crime. And if they feel as though they charged me correctly, then I ask you will I have the right to appeal if I find out later on down the line that this doesn't constitute attempted murder? That's all I am asking.

Massey's defense counsel then stated that she had advised Massey that if he did not think he was charged properly, he needed to raise the issue now and not proceed with sentencing. In response, Massey pointed out that the Ireland form

11

stated that if he was not satisfied with an issue, he could expressly reserve it for appeal, which was the only thing he was asking for.  The trial court asked Massey if he wanted to go forward with sentencing, and Massey responded that he did if the state would grant him the right to appeal.  The trial court explained that Massey could appeal a reserved issue, but the court did not think Massey had reserved an issue for appeal.  Nonetheless, the court confirmed with Massey on the record that he wanted to appeal and argue that his indictment was void and that the facts he pled guilty to did not constitute attempted murder.  The trial court then sentenced Massey to two concurrent life sentences with the possibility of parole.

## E.    Motion to Withdraw Guilty Plea

After his sentencing, Massey's trial counsel withdrew from his case, and Massey's new counsel filed a written motion to withdraw his guilty plea.  Massey's written motion to withdraw his guilty plea argued that he entered his guilty plea without fully and completely understanding the nature of the charges against him or the elements of the offense, that there was no factual basis to support his guilty plea to attempted murder, and that his plea was not entered voluntarily, but was the result of coercion by his trial counsel.  The trial court denied the motion to withdraw his guilty plea.

## F.    Direct Appeal

Massey appealed his convictions.  Massey argued, <u>inter alia</u>, that the extent of the victims' injuries (1) showed that he did not intend to kill them and (2) did not support the charges of attempted murder.  Massey also argued that there was an insufficient factual basis for his guilty pleas to attempted murder.  The Alabama Court of Criminal Appeals affirmed Massey's convictions, first quoting the exact factual basis (set forth above) that was contained in Massey's plea colloquy.  After doing that, the court stated that the transcript of the plea colloquy indicated that "Massey understood the charges against him and the facts upon which those charges were based" and that the factual basis provided by the state was sufficient for the attempted murder charges.  The Alabama Supreme Court denied certiorari.

## F.    State Post-Conviction Proceedings

Massey filed a petition for post-conviction relief, pursuant to Alabama Rule of Criminal Procedure 32.  Massey argued, <u>inter alia</u>, that his guilty plea was involuntary or unlawfully induced because he did not understand the nature of the charges and the consequences of his plea.  Citing <u>Boykin v. Alabama</u>, 395 U.S. 238, 89 S. Ct. 1709 (1969), Massey asserted that neither the trial judge nor his attorney explained the elements of attempted murder to him and that his attorney told him she did not want to try his case and that he would receive a sentence of

13

life without parole if he went to trial.  The Rule 32 court dismissed Massey's petition in a summary order.

On February 28, 2014, the Court of Criminal Appeals affirmed the Rule 32 court's dismissal of his petition.  The Court of Criminal Appeals referred to its ruling in Massey's direct appeal that the transcript of his plea colloquy demonstrated that Massey understood the nature of the charges against him and the facts upon which they were based, as follows:

> To the extent that Massey contends that he did not understand the "nature of the crime[s] with which he is charged," the claim is without merit.  This Court, in its memorandum affirming Massey's convictions and sentences, held that "[t]he transcript of Massey's guilty plea colloquy indicates that Massey understood the nature of the charges against him and the facts upon which those charges were based."  Because the transcript of Massey's guilty-plea colloquy demonstrates that Massey understood the nature of the offenses for which he was charged, the circuit court did not err when it summarily dismissed this claim.

(citation omitted).  The Court of Criminal Appeals also pointed out that in Alabama a person commits the crime of attempted murder if (1) he intends to cause the death of another person and (2) does any overt act towards the commission of that intent, even if the act falls short or wide of the goal.  The Court of Criminal Appeals also said that "although Massey contends he should have been indicted for 'assault with intent to murder,' no such crime exists in Alabama."

The Court of Criminal Appeals also rejected Massey's claim that his trial counsel coerced his plea by telling him that if he was found guilty he would get life

without parole.  In rejecting this claim, the Court of Criminal Appeals quoted extensively from the portions of the plea transcript in which: (1) his trial counsel stated that she had reviewed with Massey the Ireland form that explained his possible sentences of life with and without parole and that Massey signed that form; (2) the trial court had explained Massey's possible sentences and that sentencing was in the trial court's discretion; and (3) Massey acknowledged that he understood the range of punishment if he was convicted of attempted murder.  The Court of Criminal Appeals also quoted the part of Massey's plea colloquy in which he indicated that no one was forcing him to plead guilty and he was entering a plea voluntarily.  Because the record refuted Massey's claim of coercion, the Court of Criminal Appeals affirmed the Rule 32 court's dismissal of his petition.

## G.    Section 2254 Petition

In 2014, Massey filed this § 2254 petition in the district court, asserting, among other grounds, that his guilty plea was involuntary under Boykin.  The district court, over Massey's objection, adopted a magistrate judge's report and recommendation ("the report") recommending that his § 2254 petition be denied. As to Massey's Boykin claim, the report stated that the transcript of Massey's plea colloquy showed that Massey was charged with intentionally shooting two victims and intending to cause their deaths, that Massey's trial counsel discussed the nature of the charges with him before he entered his guilty plea, and that Massey wanted

15

the charges of attempted murder reduced to assault, but the state was unwilling to reduce the charges. The report concluded that the record showed Massey was well aware that intent to kill was an element that distinguished attempted murder from assault, and that therefore the state appellate court's denial of Massey's Boykin claim was neither contrary to, nor an unreasonable application of, clearly established federal law and did not involve an unreasonable determination of the facts.

This Court granted Massey a certificate of appealability ("COA") on whether Massey's plea colloquy was sufficient to render his guilty plea knowing and voluntary.

## II.  STANDARD OF REVIEW

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Stewart v. Sec'y, Florida Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). A federal court may not grant habeas relief on claims a state court previously adjudicated on the merits unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

16

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Hardy v. Cross, 565 U.S. 65, 66, 132 S. Ct. 490, 491 (2011) (quotation marks omitted). The question under § 2254(d) "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007).

### III.  DISCUSSION

### A.    Voluntariness of Guilty Pleas

"A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc) (citing Boykin, 395 U.S. at 243-44, 89 S. Ct. at 1712-13). The Due Process Clause requires that a guilty plea be entered knowingly and voluntarily. Boykin, 395 U.S. at 243 n.5, 89 S. Ct. at 1712 n.5; see also Bousley v. United States, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609 (1998). Thus, it is error for a trial court to accept a guilty plea "without an affirmative showing that it was intelligent and voluntary." Boykin, 395 U.S. at 242, 89 S. Ct. at 1711.

A plea is not voluntary in the constitutional sense "unless the defendant received real notice of the true nature of the charge against him." Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2257 (1976) (quotation marks

17

omitted). "Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary" in the constitutional sense. Henderson, 426 U.S. at 645 n.13, 96 S. Ct. at 2257 n.13 (emphasis added). That said, the Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record." Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405 (2005). Rather, due process is satisfied so long as the record establishes that the defendant has been informed of the elements of the offense by the time he enters his plea. Id. at 183, 125 S. Ct. at 2405-06 ("[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.").

Often the trial court will explain the elements of the crime or defense counsel will represent to the court that counsel explained the nature of the charges to the defendant. Henderson, 426 U.S. at 647, 96 S. Ct. at 2258. Here, however, the trial court did not do that and, during the plea colloquy, defense counsel made no express representation. Nonetheless, due process is still satisfied if the record as a whole establishes that the defendant fully understood the nature of the charges. See Henderson, 426 U.S. at 645 n.13, 96 S. Ct. at 2257 n.13 (noting that a defendant's guilty plea is voluntary if the record contains "proof that he in fact

18

understood the charge"); <u>Stinson v. Wainwright</u>, 710 F.2d 743, 747-48 (11th Cir. 1983) (applying <u>Henderson</u> to conclude that the state court records as a whole, including the plea and sentencing transcripts, supported the conclusion that the plea was voluntary); <u>see also</u> <u>United States v. Monroe</u>, 353 F.3d 1346, 1350 & n.3 (11th Cir. 2003) (concluding, in the Federal Rule of Criminal Procedure 11 context, that a reviewing court may consult the whole record when considering whether a guilty-plea error occurred or prejudiced the defendant).  In fact, the Supreme Court has indicated that "even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."  <u>Id.</u>; <u>see also</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 436, 103 S. Ct. 843, 852 (1983).

## B.    Massey's Claim

The state court's determination that Massey's guilty plea was not unlawfully induced or involuntarily made was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Nor was the state court's determination based on an unreasonable determination of the facts in light of the evidence.  <u>See</u> 28 U.S.C. § 2254(d)(1)-(2).  It was not unreasonable for the state appellate court to determine that Massey understood the nature of the

19

attempted murder charges against him.  Indeed, the state court record shows that Massey fully understood the attempted murder charges.

First, Massey's indictment clearly set out the elements of attempted murder in each count and the manner in which he was alleged to commit the offenses.  The charge of attempted murder is not particularly complex, and there is no evidence in the record to suggest Massey's mental capacity was limited.  Rather, the record shows Massey was both a high school and college graduate and had experience with criminal proceedings given his three prior felony convictions.  See Marshall, 459 U.S. at 435-38, 103 S. Ct. 851-53 (applying the Henderson presumption that defense counsel explained the nature of the charges where the state court had made findings that the defendant was an intelligent person, with experience in criminal proceedings, and was competently represented during his plea hearing).[5]

Second, Massey expressly certified on the Ireland form, which he signed during the plea hearing, that he understood the charges against him.  He also certified, inter alia, that he was in fact guilty of the charges to which he was pleading guilty, that he had not been forced to plead guilty by any threat or

---

[5]The Supreme Court in Henderson recognized that while such a presumption may be appropriate in "most cases," it is not appropriate in certain circumstances, such as when the defendant has limited mental capacity and the state court made a finding that the defendant was in fact not informed of the elements of the offense.  See Henderson, 426 U.S. at 647, 96 S. Ct. at 2258-59; see also Gaddy v. Linahan, 780 F.2d 935, 944 n.10 (11th Cir. 1986).  The record here shows that Massey has a college degree and good cognitive skills, and there is no evidence of limited mental capacity.  There also is no finding in the state court that Massey's trial counsel failed to explain the elements of attempted murder to him.

promise, and instead had made up his own mind to plead guilty, and that he "knowingly, intelligently, and voluntarily" waived his right to a trial. Notably, Massey received a benefit by pleading guilty because he avoided the state recommending, and his possibly receiving, a sentence of life without parole, a fact he candidly admitted to the trial court during the plea hearing.

Third, before the state court accepted the plea, the state provided a factual basis for the plea, which Massey did not dispute, reflecting the elements of attempted murder in Alabama.[6] Specifically, the factual basis (recounted above) included the statement that Massey, using a gun, shot at his victims "with the intent to cause the death of the victims." That factual basis alone adequately covers the two elements of an attempted murder charge.

Fourth, at his plea hearing, Massey displayed knowledge of the elements of attempted murder when he argued that his offense conduct should have been charged as assault rather than as attempted murder because of the extent of the victims' injuries. At the plea hearing, when Massey contended that he should have been charged with assault, the prosecutor made it clear that she was unwilling to reduce the charge to assault because the state had sufficient evidence to convict

---

[6]For this reason, there is no merit to Massey's claim that the trial court failed to determine that there was factual basis for his guilty plea. We note, however, that due process does not require a state court to find a factual basis for a guilty plea unaccompanied by a claim of innocence. See Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (citing North Carolina v. Alford, 400 U.S. 25, 38 n.10, 91 S. Ct. 160, 167 n.10 (1970)).

21

Massey of attempted murder. The trial court explained to Massey that his choice was either to plead guilty to attempted murder as charged or to go to trial, and Massey, after confirming that the trial court would have discretion to decide his sentence, chose to plead guilty as charged.

Fifth, at his sentencing hearing, Massey continued to demonstrate an understanding that intent to kill was an element of attempted murder and then decided to persist with his guilty plea despite his trial counsel's advice that he should withdraw it. Specifically, at the sentencing hearing, Massey claimed that he did not intend to harm his victims, and this time argued that his conduct did not constitute either assault or attempted murder. Massey nonetheless rejected his trial counsel's on-the-record advice that he should withdraw his guilty plea, which trial counsel said was "based upon some of [their] conversations" in which they had "gone over this several times." Instead, Massey agreed to proceed with sentencing, stating, "I am not trying to go to trial on this."[7]

Based on this particular record, the state appellate court could reasonably conclude that Massey's guilty plea was voluntarily and intelligently entered.

---

[7]Notably, Massey did not contend in either his § 2254 petition or his brief filed with this Court that he would not have pled guilty if the state trial court had advised him on the record that intent to cause death was an element of attempted murder.

22

## C.    Coercion

The state appellate court also reasonably determined that Massey was not pressured to plead guilty as a result of the state's promising to seek a sentence of life without parole if he went to trial.  The Supreme Court has repeatedly stated that there is no coercion in the constitutional sense when a prosecutor, as part of a plea bargaining process, offers not to seek a harsher sentence.  See, e.g., Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S. Ct. 663, 668 (1978); Brady v. United States, 397 U.S. 742, 752-55, 90 S. Ct. 1463, 1471-72 (1970).

Moreover, the record reflects that the state trial court explained the range of available sentences to Massey, and the Ireland form that Massey signed also stated the same possible sentences for attempted murder for a defendant, like Massey, who had three prior felonies.  Massey also affirmed, both on the Ireland form and on the record at the plea hearing, that no one had threatened, forced, or promised him anything to make him plead guilty.  Finally, the state trial court told Massey twice that it had the discretion to choose between life with parole and life without parole and that it would choose the sentence only after reviewing all the facts and evidence, considering the pre-sentence report and the parties' arguments, and listening to what the victims and Massey had to say.  Based on these facts, the state appellate court reasonably concluded that Massey understood the choices put before him by the state and freely chose to plead guilty as charged in order to avoid

23

the possibility that, if convicted, the trial court would follow the state's recommendation to impose a sentence of life without parole.

In sum, the state appellate court reasonably concluded that Massey understood the factual basis and elements of his attempted murder charges when he entered his guilty plea and that his guilty plea was knowing and voluntary. Accordingly, the state appellate court's denial of Massey's guilty-plea claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence presented.

For these reasons, we affirm the district court's denial of Massey's § 2254 petition.

**AFFIRMED.**